# Richmond.

## RICHMOND TRACTION COMPANY v. CLARKE.

### March 19, 1903.

1. STREET RAILWAYS—*Rights on Streets—Rights of Others—Crossing Track—Negligence.*—The rights of street cars on a city street, no matter by what power propelled, are not superior to those of any other vehicle, but simply equal. Between crossings, as well as at crossings, vehicles may cross street-car tracks in full view of approaching cars, if it is consistent with ordinary prudence to do so. Whether or not it is negligence for one to attempt to drive across a street-car track when he sees a car coming one hundred yards off is a question for the jury under all the facts and circumstances of the case. It is not negligence as a matter of law.

2. STREET RAILWAYS—*Contributory Negligence.*—The rules for determining contributory negligence, as applied to street railways, are in some respects quite different from those applicable to steam railroads running on their own land. For a discussion of these rules see the opinion of the court.

3. STREET RAILWAYS—*High Rate of Speed—Rights of Travellers.*—A traveller on a city street has the right to assume that street cars will not be run at an excessive rate of speed. If so running when approaching a traveller, and because of such high rate a collision occurs with him, whereby he is injured, it should be left to the jury to say whether or not, under all the circumstances of the case, the street-car company is negligent.

4. STREET RAILWAYS—*Personal Injuries—Trespasser—Contributory Negligence—Knowledge of Plaintiff's Danger.*—A plaintiff, even though a trespasser, may recover of a railway company for an injury inflicted on him, notwithstanding his own negligence may have exposed him to the risk of injury, if the company, after it became aware of the plaintiff's danger, could, by the use of ordinary care, have avoided injuring him, and failed to do so.

5. STREET RAILWAYS—*Approaching Vehicles from Rear—Warning.*—When a street car is approaching from the rear a vehicle crossing the

track, it is the duty of the motorman to give timely warning of his approach, unless it is clearly observed, and to reduce his speed to such an extent as to enable him to stop his car, if necessary to avoid a collision, and to continue at such guarded rate of speed until the danger of collision is past.

6. Insrtuctions—*Inviting Error—Subsequent Complaint.*—Where both plaintiff and defendant have asked for, and induced the court to give, instructions upon a given theory of the evidence, neither will be permitted after verdict to call in question that theory. A party cannot invite the court to commit an error, and then complain of it.

7. Appeal and Error—*New Trial—Conflicting Evidence.*—Where the evidence is conflicting on the material issues in a case, it is peculiarly within the province of the jury to weigh the evidence and determine the issues, and the verdict should not be disturbed on a writ of error.

Error to a judgment of the Law and Equity Court of the city of Richmond, rendered July 8, 1902, in an action of trespass on the case wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The opinion states the case.

*Wm. L. Royall,* for the plaintiff in error.

*R. H. Talley* and *Wyndham R. Meredith,* for the defendant in error.

Buchanan, J., delivered the opinion of the court.

This action was brought by the defendant in error to recover damages for injuries caused by the alleged negligence of the Richmond Traction Company, a corporation operating an electric street railway in the city of Richmond.

It appears that the defendant company operates a double track street-car line on Broad street in that city; that at the point where the plaintiff was injured the street is about forty-three and one-half feet wide between the curbing; that from the northern curb to the nearest rail of the street-car track is

nearly fourteen feet; and that the grade is heavy, being about eight feet in the hundred feet.

The plaintiff testified that on the day he received the injuries complained of he was driving in a buggy, without a top, down the street on the north side thereof between the curbing and the northern rail of the street-car track; that seeing a wagon backed up near the curbing on the north side with the horses' heads extending out into the street he determined to drive across the street-car tracks to the south side of the street; that before going upon the track he looked up the street and saw a car coming down the street on the southern track about one hundred yards away; that he started across at the rate of four or five miles an hour, and that when his buggy was entirely across the street-car track, except the left hind wheel, it was struck by the street car and overturned, throwing the plaintiff out, fracturing his hip, and inflicting the other injuries complained of; that when he started across the track he looked, saw the approaching car, did not notice anything unusual in its speed, and thought from the distance the car was from him he had time to cross the track without running any risk.

Two other witnesses thought the car was one hundred yards away when the plaintiff started to cross the street; both of them testified that the car was running very fast, one four or five times as fast as the cars usually ran; that the motorman neither rang the bell nor made an effort to stop the car until it struck the wheel of the buggy, after which, one of the witnesses states, the car ran two car lengths before it stopped. That witness further testifies that if the car had been running at its regular speed the plaintiff could easily have driven across the track and gotten out of its way.

The ordinances of the city of Richmond provide that no street·car shall at any time run at a greater rate of speed on any street of the city than eight miles an hour, and that each motorman or driver of a street railway car shall keep a vigilant watch

for all teams, carriages or persons, and shall strike a gong or bell several times in quick succession in approaching within one hundred feet of such team, carriage, or person.

The case made by the defendant's evidence was briefly as follows: The motorman testified that he was running about four miles an hour when he saw the plaintiff start to cross the street about a car length in front of him; that he was and had been ringing the bell; that he at once applied the brakes, reversed the current, and used all his means for stopping the car except sanding the track, but was unable to stop it until just as it reached the plaintiff's buggy; that the car and all its appliances were in good condition; that the accident occurred about seventy-five yards west of the point where the Seaboard Air Line Railroad crosses Broad street; that all street cars are required by the rules of the defendant to stop, and do stop, not less than twenty-five feet from that and other steam railroad crossings until it is seen that the way is clear; that if the car had been running as fast as the plaintiff's witnesses said it was he could not have stopped it before reaching the railroad crossing; that the grade of Broad street where the accident occurred is steep, and that he never runs down it at more than six miles an hour; that he can stop on that grade in one car length when running at the rate of ten miles an hour.

The conductor on the car testified that the car was running at its usual speed, four or five miles an hour; that the bell was rung, and that the car stopped immediately after it struck plaintiff's buggy.

Three other witnesses testified as to the speed of the car. One of them thought it was running about four or five miles an hour; another that the speed was moderate, and the other that the speed was not unusual.

The Chief Engineer of the defendant company proved that he had ascertained by actual measurements that Broad street at the point where the accident occurred was forty-three feet,

four and one-half inches wide from curb to curb; that the rails on each track were five feet apart, and the distance between the tracks four feet and one inch; that from the northern curb to the nearest rail on the northern track was thirteen feet and nine inches, and to the northern rail on the southern track twenty-two feet and ten inches; that from the southern rail of that track to the southern curb was fifteen feet, six and one-half inches, and that the average length of a wagon and horse was fifteen feet.

In submitting the case to the jury the court gave seven instructions—five asked for by the plaintiff, and two upon the motion of the defendant, and refused to give instructions numbered 9, 10 and 11 asked for by the defendant.

The action of the court in giving instructions numbered 2 and 4 for the plaintiff, and refusing to give instructions 9, 10 and 11 is assigned as error.

By instruction No. 9 the court was asked to tell the jury that a traveller in a buggy upon the street of a city is negligent as a matter of law who voluntarily attempts to cross a street-car track in front of an approaching car, which he sees, at a distance of one hundred yards. To sustain the contention that the court erred in not giving that instruction the defendant cites the case of the *Southern Railway Company* v. *Bryant*, 95 Va. 219, 28 S. E. 183, in which it was held that "It is without doubt a general rule that a person about to cross a railroad track, even at a public crossing, must exercise ordinary care and prudence. He must use all his faculties to avoid danger. He should look and listen. He should look in each direction from which a train could come, and if not in sight, listen for its approach, and if warned by his faculties of the near approach of a train it is his duty to keep off the track until it has passed, or no recovery can be had for any injury he may receive."

This is a correct statement of the law as to the duty of travellers about to cross the tracks of a steam railroad, but the

rules as to what will constitute contributory negligence upon
street-car lines are in some respects quite different. Some of
the reasons for that difference are stated in *Bass' Admr.* v.
*Norfolk Railway & Light Co.*, 100 Va. 1, 40 S. E. 100. That
was a case where a pedestrian was crossing a street-car track
at a crossing. But vehicles between crossings as well as at
crossings may cross street-car tracks in full view of approaching
cars, if it is consistent with ordinary prudence to do so. "Street
cars," says Sherman & Redfield on Negligence, Vol. 2, sec.
485*a* (5th Ed.) "are not usually authorized to run at very high
speed; and the rights and duties of the railroad company and of
travellers on the highway respectively are more analogous to
those which govern in the case of ordinary vehicles than to
those which apply to steam railroads owning the land under
their tracks. The distinction of duties rest upon the differences
of ownership. In the absence of an explicit grant to that effect,
it is never presumed that the State has given to the railroad
company any exclusive title to a highway; and its use of rails
and cars is regarded as only a more convenient form of using
the highway without imposing any new burdens upon the land.
It follows that the rights. of street cars, no matter by what
power impelled, are not superior to those of any other vehicle,
but simply equal. Vehicles of all kinds, entitled to a general
use of the highway, including not only those drawn by horses,
but also 'cycles have as good a right to travel across or along
and upon a car track as upon any other part of the road. On
the other hand, street cars of any kind, lawfully authorized to
run upon the streets, have as full right to run in accordance
with the condition of their construction and motive power as
any other vehicles. No fault can be found with them on ac-
count of noise, inseparable from their careful operation; nor
can they be required to deviate from their tracks, or to give
way to other vehicles. On the contrary, for the very same
reasons which make it the duty of a slow and heavy wagon to

move to one side, so far as may be necessary to enable a faster one to pass, or of a light wagon to deviate from its course rather than to compel a heavy one to expend severe effort in turning aside, it is the obvious duty of any vehicle either meeting a street car or going in front of it to get out of its way."

In section 485b they say that "the widespread change of motive power on street railroads, from horses to cables or electricity, by making possible an almost indefinite increase of speed, has increased the obligation, and raised the standard of duty in the management of such cars, without increasing their privileges on the streets, except so far as to allow a reasonable and safe increase of speed. The operator of such a car must, therefore, to an extent, commensurate with the new hazards increased by the new power 'enlarge the degree of vigilence and care to avoid injuries which its own appliances have made more imminent.'"

And again, in discussing the subject of contributory negligence, they say "the rules as to what will constitute contributory negligence where street cars are concerned, are in some respects quite different from those which are applied to steam railroads running on their own land. All questions as to trespassing are eliminated. No actual traveller, even on foot, can be a trespasser on a highway, however negligent he may be in its use. There can be no analogy between the cases of a trespasser upon the private property of a railroad company, and a traveller upon a street railroad. As already stated, travellers may walk, ride or drive either across or along the track, just as freely as upon any other part of the street, so long as they do not obstruct the cars, or rashly expose themselves to danger. Travellers may assume that street cars will give proper signals, and not run at an excessive rate of speed, and they may properly walk, ride or drive across or even along the track in full view of an approaching street car, if, under all the circumstances, it is consistent with ordinary prudence to do so."

I have quoted thus fully from Sherman & Redfield on Negligence, because it seems to me to be both on principle and authority an accurate and just statement of the relative rights and duties of street cars and other vehicles upon the highways and streets. See *Bass* v. *Norfolk Rwy. & Light Co.*, *supra*; *Cooke* v. *Balt., &c. Rwy. Co.*, 80 Md. 551, 31 Atl. 327; *Newark, &c. Co.* v. *Block*, 55 N. J. L. 605, 27 Atl. 1067, 22 L. R. A. 374; *O'Neil* v. *Dry-Dock Co.*, 129 N. Y. 125, 29 N. E. 84, 26 Am. St. Rep. 512; *Shea, &c.* v. *St. Paul, &c. Rwy. Co.*, 50 Minn. 395, 52 N. W. 902; *Rascher* v. *East Detroit*, 90 Mich. 413, 51 N. W. 463, 30 Am. St. Rep. 447; *Laufer* v. *Bridgeport Co.* (Conn.), 37 Atl. 379, 37 L. R. A. 533; Joyce on Electric Law, sec. 570; Beach on Contributory Neg. (2nd ed.), sec. 289.

Whether or not the plaintiff was guilty of contributory negligence in driving across the street when he saw a car approaching one hundred yards off was a question for the jury under all the facts and circumstances of the case, and was clearly not negligence as a matter of law. The court properly refused to. give instruction No. 9.

Instruction No. 10 was properly rejected. It assumes that it was negligence *per se* for the plaintiff to attempt to cross the street in front of an approaching car which he saw without regard to the distance the car was from him, or the circumstances under which he attempted to cross the street. This instruction was clearly erroneous for the reasons given in disposing of instruction No. 9. No. 10 is erroneous in another respect. It wholly ignores the evidence of the plaintiff that the defendant was running its car at a very high rate of speed—much greater than it had the right to do under the ordinances of the city. The plaintiff had the right to assume that the car would not run at an excessive rate of speed. 2 Shear. & Red., sec. 485c. If it was so running when it approached the plaintiff and because of its high rate of speed it was unable to avoid injuring him, it would have been for the jury to say whether or not under all the circumstances of the case it was liable.

Instruction No. 11 declares, as did No. 9, that it was *per se* negligence for the plaintiff to attempt to cross the street in front of the approaching car which he saw one hundred yards off. But it was objectionable in another respect. It told the jury that if the plaintiff had gone on the track improperly they must find for the defendant, unless they believed that the motorman had increased the speed of its car, and rendered it impossible for the plaintiff to get across the track whilst the car was running the one hundred yards, ignoring entirely that just and humane rule of law which permits a plaintiff to recover, even though he were a trespasser, notwithstanding his own negligence may have exposed him to the risk of injury, if the defendant, after he becomes aware of the plaintiff's danger, can, by the use of ordinary care, avoid injuring him and fails to do so.

Instruction No. 2, given for the plaintiff, is objected to because it could not be understood by the jury, and was, therefore, misleading. The language of the instruction is not as clear as it might be. But we do not think that the jury could have had any difficulty in understanding what it meant. The first sentence of the instruction told the jury in effect that where a street car approached a vehicle from behind, which is crossing the street-car track, it is the duty of the motorman to give timely warning, unless he sees that his approach is clearly observed, and to reduce his speed to a point sufficient to enable him to stop his car if it becomes necessary to avoid a collision, and to continue to run at such guarded rate of speed until the vehicle has cleared the track or the danger of collision is past. The uncontradicted evidence in the case showed that the car was approaching from the rear, and that the plaintiff knew it when he attempted to cross the track. The next sentence of the instruction tells the jury that if they believe that such were the facts, and that the company did not perform its duty in respect thereto, and could have done so by exercising

reasonable care, and as a result collided with plaintiff's wagon, thereby injuring him without negligence on his part, they must find for the plaintiff. The manifest purpose of the instruction was to tell the jury what the duty of the company was, if the car approached a vehicle from the rear which was about to cross the street-car track, and we do not think that the jury could have misunderstood its object and meaning or been misled by it.

The giving of instruction No. 4 for the plaintiff is also assigned as error. The objection made to it is that as drawn it concludes with the direction to find for the plaintiff, and must therefore contain within itself every fact necessary for that conclusion, and yet it nowhere provides that the plaintiff must be free from contributory negligence.

That instruction tells the jury that if they believe from the evidence that at the time the plaintiff got on the south track of the defendant company, the motorman on the car saw, or could, by the exercise of ordinary care, have seen his danger in time to stop or slow down the car so as to avoid striking his buggy, and failed in the exercise of such care to do so, they must find for the plaintiff.

The instruction assumes that the plaintiff was guilty of contributory negligence in going upon the track, and correctly states the law based upon that assumption, unless there was evidence tending to show that after going upon the track the plaintiff was again guilty of negligence in not getting out of the way of the car.

The plaintiff testified that when he started to cross the street the car was one hundred yards away, and as he only had a short distance to travel to get across, it is argued by the defendant's counsel that he must have loitered upon the track, or he would have been out of danger before the car reached him. No witness of the defendant testifies upon this point. The plaintiff's evidence is that he was urging his horse forward and

went across as quickly as he could. Both parties, however, seem to have been willing to submit the case to the jury upon the theory that there was no evidence that the plaintiff did not cross the track as rapidly as he could, for instruction No. 7, given by the court upon the defendant's motion, tells the jury that if they believe from the evidence that the plaintiff was guilty of contributory negligence in attempting to cross the street they must find for the defendant, unless they further believe that the motorman, "after he saw, or, by the exercise of reasonable care, could have seen, that the plaintiff was going to cross the said track in front of his car, failed to exercise reasonable care to avoid the accident." Both parties having asked for, and induced the court to give, instructions upon the theory that there was no such evidence, neither will be permitted after a verdict to question the correctness of the instructions on the ground that there was such evidence. A party cannot invite the court to commit an error and then complain of it. *Kimball & Fink* v. *Friend,* 95 Va. 125, 27 S. E. 901; *Richmond Traction Co.* v. *Hildebrand,* 99 Va. 48, 52, 34 S. E. 888.

The remaining assignment of error is to the refusal of the court to set aside the verdict and grant a new trial.

From a brief statement of the evidence made in the earlier part of this opinion, it is seen that the evidence was conflicting upon every material point. The questions whether the defendant was guilty of negligence in the management of its car, or the plaintiff was guilty of contributory negligence in attempting to cross the street in front of the approaching car under the facts and circumstances of the case, were questions peculiarly within the province of the jury. Their determination of those questions depended largely upon the credibility of the witnesses and the value or weight the jury, who saw and heard them testify, attached to the testimony of ·each.

There being no error of law to the prejudice of the defend-

ant in submitting the case to the jury, we cannot say that upon the whole case the evidence was plainly insufficient to sustain the verdict.

We are of opinion that the judgment should be affirmed.

*Affirmed.*