Staunton.

ROANOKE RAILWAY AND ELECTRIC COMPANY V.
LAURA F. LOVING, ADMINISTRATRIX OF
FLEMING H. LOVING, DECEASED.

September 20, 1923.

1. STREET RAILROADS—*Appeal and Error—Conflicting Evidence—Collision with Automobile—Negligence and Contributory Negligence Questions for Jury—Case at Bar.*—In the instant case, an action for death caused by a collision of an automobile with a street car, the evidence viewed from the standpoint of plaintiff proved excessive speed on the part of the street car, violation of city ordinances, lack of care on the part of the motorman, and that the injuries complained of were the direct and proximate result of the negligence of the defendant. And considered from the viewpoint of the defendant, the evidence proved that plaintiff violated a city ordinance, and that his own negligence contributed to or caused his injuries.

   *Held:* That defendant's primary negligence and the plaintiff's contributory negligence were questions for the jury, and that they having resolved all conflicts in the evidence in favor of the plaintiff, their findings were conclusive upon appeal.

2. STREET RAILROADS—*Evidence—Allegata and Probata—Contributory Negligence—Case at Bar.*—In the instant case, an action growing out of a collision between a street car and an automobile, a witness testified that plaintiff's decedent while driving around the rear end of a car standing on the northbound track was looking for cars approaching on the southbound track. Defendant objected that this testimony was at variance with the allegations of the notice.

   *Held:* That while it is true, generally speaking, that the *allegata* and *probata* must correspond, yet as the contributory negligence of plaintiff's intestate was put in issue by the defendant's grounds of defense, it was clearly admissible for the plaintiff to show decedent's conduct at the time he crossed the tracks of defendant, that the jury might determine whether he acted as an ordinarily prudent man would have acted in the circumstances.

3. NEGLIGENCE—*Contributory Negligence—Questions of Law and Fact.*—Negligence is never a question of law for the court, where the evidence is such that fair minded men might differ as to the proper conclusion to be drawn therefrom.

4. Street Railroads—*Collision—Ordinances—Instructions—Case at Bar.*— In an action for death arising out of a collision between a street car and an automobile, the court instructed the jury that an ordinance requiring the driver of a street car meeting another street car that is standing still to reduce its speed to six miles an hour and give signal of his approach, was a regulation intended for the protection of travelers, and any violation of it, if proved, was competent evidence of negligence.

   *Held:* That this instruction was proper and did not suggest that the decedent could rely on the observance of the ordinance by the defendant, without himself exercising ordinary care for his own safety.

5. Street Railroads — *Collision — Ordinances — Instructions — Signals— Speed.*—In an action for death arising out of a collision between a street car and an automobile, the court instructed the jury "that the deceased had a right to presume that the defendant in operating its cars would give proper signals, not propel its cars at an excessive rate of speed, but would exercise ordinary and reasonable care for the safety of the public using the street, and comply with the provisions of the traffic ordinance regulating the operations of its cars."

   *Held:* No error.

6. Street Railroads—*Collision—Contributory Negligence—Instructions— Case at Bar.*—In the instant case, an action for death arising out of a collision between a street car and an automobile, the court did not err in omitting from an instruction words to the effect that even though defendant was negligent, yet if the decedent drove from behind a northbound car upon the southbound track, when his vision of approaching street cars on the southbound track was obstructed, he was guilty of contributory negligence. This language dealt solely with the question of vision, and excluded from the jury the consideration of any other caution which decedent took, and his right to rely to some extent upon the signal which it was the duty of the defendant to give.

7. Street Railroads—*Collision with Automobile—Contributory Negligence—Instructions.*—In an action for death arising out of a collision between an automobile and a street car, an instruction that it is contributory negligence as a matter of law for the driver of an automobile to drive between crossings upon a street car track over which his view of approaching cars is obstructed, "before using reasonable care under the circumstances to ascertain whether a street car is approaching and at what distance," is proper. And the contention of the street railway that the instruction should have read "before ascertaining whether a street car is approaching" is without merit.

8. Street Railroads—*Collision—Care to be Exercised by Traveler.*—The law does not require a traveler, before proceeding to cross a street

railway track, to "ascertain" whether a car is approaching, but to "exercise reasonable care" under the circumstances "to ascertain" whether it is approaching.

9. STREET RAILROADS—*Collision—Contributory Negligence—Reasonable Care—Case at Bar.*—In the instant case, an action for death arising out of a collision between an automobile and a street car, it appeared from the evidence that the decedent looked, and it might be inferred that he listened, as he turned and proceeded to cross defendant's two railway tracks; that he crossed the east track eighteen feet in the rear of a northbound car, and that the southbound car which struck him was over fifty-five feet away when he reached the west track; that if this car had observed the speed limit, the automobile would have had ample time to clear the tracks in safety.

*Held:* That it could not be said that decedent, as a matter of law, did not exercise reasonable care.

10. NEGLIGENCE—*Contributory Negligence—Ordinary Care.*—The law does not require a person to know that he is absolutely safe before taking a given course of action; he is only required to exercise ordinary care to avoid accident—such care as a reasonably prudent person would exercise under like circumstances.

11. STREET RAILROADS—*Speed of Cars—Collision with Automobile—Case at Bar.*—In the instant case, an action for death arising out of a collision between a street car and an automobile, it was immaterial on a motion to set aside the verdict of the jury for the plaintiff because contrary to the evidence, whether a car from behind which the decedent turned to cross the other track of the street railway was standing or in motion. If the car was standing, the car approaching from the opposite direction, which struck the defendant, was required by the ordinance to cut its speed to six miles an hour and give signal of its approach, which it did not do. If it was not standing when decedent attempted to cross the other track, decedent had a right to assume that the car which struck him would be operated with ordinary care, commensurate with the congested condition of traffic at that point. Notwithstanding these conditions, the car was running at twenty-five miles an hour, when the legal duty of ordinary care required the defendant to reduce its speed from the maximum of twenty miles an hour to a reasonable rate, in view of all the circumstances.

12. STREET RAILROADS—*Collision—Speed of Car and Warning.*—Travelers may assume that street cars will give proper signals, and not run at an excessive rate of speed. The law which gives to street cars the superior right of way over the streets between street crossings, does not authorize their owners to run them at a dangerously high rate of speed, where the traffic is congested, or where they have reason to believe that vehicles will be crossing the street.

13. STREET RAILROADS—*Contributory Negligence—Defendant's Negligence does not Excuse that of Plaintiff.*—In an action for death arising out

of a collision between an automobile and a street car, plaintiff's intestate could not rely on the assumption that the motorman on the street car would observe the law, to excuse him from exercising ordinary care for his own safety.

14. Street Railroads—*Contributory Negligence—Automobile Following Street Car Crossing Opposite Track while View is Obstructed.*—In the instant case, an action for death arising out of collision between a street car and an automobile, it was not negligence, as a matter of law, for the decedent following a street car in an automobile on a northbound track not to wait until the car had gone far enough on its way to uncover the view of the southbound track for a long distance before attempting to cross that track.

15. Street Railroads—*Action for Injuries—Contributory Negligence—Rights of Street Railway at and between Crossings.*—Street railway companies have no right to demand that pedestrians, or others traveling the streets of a city, shall be subjected to unnecessary or unreasonable delays. The rights of the public and the street car are the same at the street crossings. And while the fact that the street car can run only on its track gives it the superior right between street crossings, this superior right does not deprive those on foot or vehicles of the right to cross the car tracks, or travel along and upon them in front of a moving car, at their pleasure, provided they do not obstruct the cars and it is compatible with ordinary prudence, under all the circumstances, for them to do so.

16. Negligence—*Contributory Negligence—Question for Jury.*—Whether a plaintiff in an action to recover damages for personal injuries has been guilty of contributory negligence is a question for the jury, under proper instructions from the court, and their finding will not be disturbed, where the evidence is such that reasonable men might fairly differ as to whether there was such negligence or not.

Error to a judgment of the Corporation Court of the city of Roanoke, in a proceeding by motion for a judgment for damages. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Woods, Chitwood, Coxe & Rogers,* for the plaintiff in error.

*Wright & Wright,* for the defendant in error.

WEST, J., delivered the opinion of the court.

This is an action by Laura F. Loving, administratrix of Fleming H. Loving, deceased, against the Roanoke Railway and Electric Company for damages to an automobile and damages for the death of Fleming H. Loving, caused by a collision of the automobile with one of the cars of the company. The judgment entered upon a verdict for $6,000 in favor of the plaintiff is under review.

For convenience, the parties will be designated as plaintiff and defendant, with respect to their positions in the trial court.

The plaintiff alleges that the defendant was negligent, in the excessive and unlawful speed of the car, failure to give signal of its approach and maintain an outlook, and failure to properly equip the car with braking mechanism and appliances and operate it with reasonable care.

The defendant relies on the general issue and the contributory negligence of the plaintiff's intestate, to defeat the plaintiff's action.

The defendant owns and operates a double track electric car line along the center of Jefferson street, in the city of Roanoke, Virginia. At the point where the accident occurred Jefferson street runs south, to the fair grounds, and north, to the "downtown" section of the city. Northbound cars use the east track and southbound cars use the west track. Whitmore avenue crosses Jefferson street at right angles and Frank Howell's gasoline filling station is located on the west side of Jefferson street at the corner of Jefferson street and Whitmore avenue.

During the Roanoke Fair, on September 23, 1921, the plaintiff's intestate, Fleming H. Loving, while on his

way from the fair grounds to the city, was alone in his automobile, following in the rear and on the east side of the company's northbound car No. 19 on Jefferson street. The car stopped to take on passengers at the south side of Whitmore avenue, about two blocks from the fair grounds. Fleming, desiring to go to Howell's filling station, or down town, drove his automobile slowly around several feet in the rear of and past the left side of the car and across the west track, upon which southbound car No. 53 was then approaching. The right front corner of this car struck the automobile about the middle of the right side thereof, knocking it clear of the track over upon the curbing of Jefferson street. Loving's throat was cut by broken glass from the windshield, and death resulted in a few minutes.

Section 8 of the traffic ordinance of the city of Roanoke requires that "the driver of street car meeting another street car that is *standing* shall reduce its speed to six miles an hour and give signal of its approach," and section 21 of the same ordinance authorizes the driver of an automobile at the rear of any street car which has stopped to take on or let off passengers to "pass such street car on its left side at a rate of speed not exceeding six miles per hour, if he can do so without interfering with pedestrians or with vehicles going in the opposite direction." The ordinance expressly provides that the term "vehicles" shall not include street cars.

The evidence disclosed by the record, when viewed from the standpoint of the plaintiff, tends to prove the following facts:

That the defendant, in violation of the city ordinance, caused its car No. 53 to approach and meet its car No. 19, while standing, without reducing its speed below *twenty* miles an hour, without giving signal of its ap-

proach, and without maintaining a lookout; that the motorman could have seen the automobile more than fifty-five feet in front of him, but made no effort to slacken the speed of his car until within a few feet of the automobile; that as a result of the motorman's failure to properly control the car, it ran three hundred feet after the impact before it could be brought to a standstill; that if the speed of the car had been slightly checked the plaintiff's intestate would have crossed the track in safety; that the injuries complained of were the direct and proximate result of the negligence of the defendant; that plaintiff's intestate, assuming that the defendant would observe the speed limit fixed by the ordinance, looking and listening as he proceeded, drove his automobile about eighteen feet in the rear of car No. 19 and upon the west track at a rate of speed not to exceed four or five miles an hour, and was not guilty of any negligence which contributed to his injuries, or death.

When considered from the viewpoint of the defendant, the evidence, if believed, tends to prove that the plaintiff, without the exercise of ordinary care and in violation of the rate of speed fixed by the city ordinance, drove his automobile upon the west track in front of a rapidly moving car and that his own negligence contributed to or caused his injuries; that car No. 19 was not standing when met by car No. 53; and that the defendant was not guilty of any negligence which was the proximate cause of the injuries complained of, and can in no event be held liable for damages in this action.

[1] This being the status of the evidence, the defendant's primary negligence and the plaintiff's contributory negligence were questions for the jury. They have resolved all conflicts in the evidence in favor of the plaintiff and their findings are conclusive upon this court. Certain it is, that we cannot say the plaintiff's intestate

did not act as other reasonably prudent men would have acted under the circumstances, and that he was guilty of contributory negligence as a matter of law.

It follows that unless the court committed error, prejudicial to the defendant, in some of its rulings during the trial, the judgment must be affirmed.

The defendant relies upon six assignments of error.

[2] The first assignment of error is the action of the court in refusing to strike out the evidence of Sam Hairston. The defendant claims that this testimony, which tended to show that while driving around the rear end of the standing northbound car, the plaintiff was looking for cars approaching on the southbound track, was at variance with the allegations of the notice.

It is true, generally speaking, that the *allegata* and *probata* must correspond. *Dupont Engineering Co.* v. *Blair*, 129 Va. 423, 106 S. E. 328. But, the contributory negligence of the plaintiff's intestate was put in issue by the defendant's grounds of defense, and it was clearly admissible for the plaintiff to show decedent's conduct at the time he crossed the tracks of the defendant, that the jury might determine whether he acted as an ordinarily prudent man would have acted in the circumstances. This assignment is without merit.

The second assignment of error is the action of the court in giving, on behalf of the plaintiff, instructions numbered from 1 to 6, inclusive.

We have carefully examined these instructions. They correctly state the law applicable to the case and when read in connection with instruction D, asked for by the defendant, as amended and given, it cannot be said that the defendant was in any way prejudiced by them.

[3] Instructions Nos. 1, 2 and 5 are objected to because they submitted to the jury the question of the plaintiff's contributory negligence which should have

been decided by the court. For reasons already assigned, in discussing the evidence, this question was properly submitted to the jury. Negligence is never a question of law for the court where, as here, the evidence is such that fair minded men might differ as to the proper conclusion to be drawn therefrom. *Director-General* v. *Brown,* 133 Va. 222, 112 S. E. 833; *Perkins* v. *Director-General,* 133 Va. 242, 112 S. E. 839; *Va. Ry. & P. Co.* v. *Wellons,* 133 Va. 350, 112 S. E. 843.

[4] Instruction No. 3 reads as follows: "The jury is instructed that the traffic ordinance of the city of Roanoke, introduced in evidence, requiring 'the driver of a street car meeting another street car that is standing still to reduce its speed to six miles an hour and give signal of its approach' is a regulation intended for the protection of travelers, and any violation of it, if proved, is competent evidence of negligence in this suit, to be considered along with all other evidence in the case in determining whether the defendant, as charged in the notice of motion, was guilty of negligence which caused Flem Loving's automobile to be damaged and injuries inflicted upon him which caused his death, as therein alleged."

When the language of this instruction is construed according to its true intent and meaning, we find nothing to sustain the contention of the defendant that it was error to tell the jury that the ordinance therein referred to is "intended for the protection of travelers." The language used in the ordinance fully warranted the court in including in the instruction the language complained of. When the instruction is read as a whole it is manifest that the court was simply informing the jury that a violation of the ordinance, when proved, was evidence of the negligence of the defendant, in the operation of its cars, without, as contended by the defend-

ant, suggesting in any way that Loving could rely on the observance of the ordinance by the defendant, without himself exercising ordinary care for his own safety.

The law, substantially, as stated in this instruction, was approved by this court in *Norfolk Ry. & Light Co.* v. *Corlette*, 100 Va. 355, 41 S. E. 740.

[5] Instruction No. 4 told the jury "that the deceased had a right to presume that the defendant in operating its cars would give proper signals, not propel its cars at an excessive rate of speed, but would exercise ordinary and reasonable care for the safety of the public using the street, and comply with the provisions of the traffic ordinance regulating the operations of its cars."

It is only necessary to say that the defendant does not point out any error in this instruction, except those disposed of in discussing instruction No. 3. Besides, the instruction has been, in effect, heretofore approved by this court. *Richmond Traction Co.* v. *Clarke*, 101 Va. 388, 43 S. E. 618; and *Va. R. & P. Co.* v. *Oliver*, 133 Va. 342, 112 S. E. 841.

[6] The third and fourth assignments consist of the action of the court in refusing to give certain instructions, and modifying others, offered by the defendant.

The defendant complains of the action of the court in modifying instruction "B" by striking out the following: "In other words, even though the defendant was negligent, yet if the jury believe Mr. Loving drove from behind the northbound car upon the southbound car track when his vision of approaching street cars on the southbound track was obstructed, and was struck by the southbound car, he is guilty of contributory negligence, and the plaintiff cannot recover."

The court did not err in omitting the language quoted from the instruction as offered, since it did not correctly state the law as applicable to the case. It dealt solely

with the question of vision, and excluded from the jury the consideration of any other caution which the plaintiff's intestate took, and his right to rely to some extent upon the signal which it was the duty of the defendant to give. *Director-General* v. *Brown*, 133 Va. 222, 112 S. E. 833.

[7] The defendant alleges error in the court's modification of instruction "C," by which it told the jury "that it is contributory negligence as a matter of law for the driver of an automobile to drive between crossings upon a street car track over which his view of approaching street cars is obstructed, and over which he knows that street cars pass at frequent intervals, before using reasonable care under the circumstances to ascertain whether a street car is approaching and at what distance," and insists that the instruction should have read, "before ascertaining whether a street car is approaching."

[8, 9] The instruction as given was correct. The law does not require a traveler before proceeding to "ascertain" whether a car is approaching, but to "exercise reasonable care" under the circumstances "to ascertain" whether it is approaching. It is shown in evidence that plaintiff's intestate looked (and it may be inferred from the evidence, listened), as he turned and proceeded to cross the defendant's two railway tracks; that he crossed the east track eighteen feet in the rear of the northbound car and that the southbound car was over fifty-five feet away when he reached the west tracks; that if the car had observed the speed limit of six miles an hour, the automobile would have had ample time to clear the tracks in safety. Under such circumstances it cannot be said that Loving, as a matter of law, did not exercise reasonable care.

In *Newport News, etc., R. Co.* v. *Bradford*, 99 Va. 120,

37 S. E. 808, the court, speaking through Judge Buchanan, said: "Ordinary care does not require one absolutely to refrain from exposing himself to peril. But it does require such watchfulness and precaution to avoid coming into danger as a person of ordinary prudence would use for his own protection under the same circumstances, in view of the danger to be avoided."

[10] This proposition of law was re-stated by the court in *Norfolk & Portsmouth T. Co.* v. *Forrest*, 109 Va. 668, 64 S. E. 1038, as follows: "The law does not require a person to know that he is absolutely safe before taking a given course of action; he is only required to exercise ordinary care to avoid accident—such care as a reasonably prudent person would exercise under like circumstances."

The objections made to the action of the court in modifying instruction "D" are the same as were urged to sustain defendant's instruction "C," and for the reasons assigned in discussing instruction "C" we find no merit in defendant's contention as to instruction "D."

We have carefully considered the remaining assignments of error to the action of the court in refusing and modifying instructions offered by the defendant, as set forth in the third and fourth assignments of error, and find no merit in them. It would, therefore, be unprofitable to consider these assignments further.

The fifth assignment of error is based upon the action of the lower court in overruling the defendant's motion to set aside the verdict of the jury because contrary to the law and the evidence and to grant a new trial; and the sixth assignment of error is the court's refusal to set aside the verdict because contrary to the law and the evidence and enter judgment for the defendant. These two assignments will be considered together.

The defendant admits that the southbound car was

traveling at a rate of speed in excess of six miles an hour at the time it met the northbound car, but denies that the northbound car was then standing, although admitting that the testimony is in conflict on this point. We know of no rule of law by which the court can take from the jury the duty to pass upon the credibility of the witnesses in such cases.

[11, 12] In view of the evidence, whether the northbound car was standing or moving is not material on the motion to set aside the verdict of the jury because contrary to the evidence. If the car was standing, the southbound car was required by the ordinance to cut its speed to six miles an hour and give signal of its approach, which, according to the testimony of some of the witnesses, it did not do, and Loving was authorized to act upon the assumption that the company would comply with both requirements. If the northbound car was not standing when Loving attempted to cross the southbound track, he had the right to assume that the southbound car would be operated with ordinary care, commensurate with the conditions which the motorman might expect to confront him at the point of the accident, in view of the entrance to the filling station and the congested condition of the traffic near the fair grounds.

Judge Buchanan, speaking for the court in *Traction Co. v. Clarke*, 101 Va. 382, 43 S. E. 618, said: "Travelers may assume that street cars will give proper signals, and not run at an excessive rate of speed  *  *."

Notwithstanding these conditions, there is evidence that the southbound car was running twenty-five miles an hour, when the legal duty of ordinary care required the defendant to reduce its speed from the maximum of twenty miles an hour to a reasonable rate in view of all the circumstances.

On the other hand Loving was only required by the ordinance to reduce his speed to six miles an hour, pass around to the left and not interfere with vehicles coming in the opposite direction. "Vehicles" did not include street cars. The law which gives to street cars the superior right of way over the streets between street crossings does not authorize their owners to run them at a dangerously high rate of speed where the traffic is congested or where they have reason to believe that vehicles will be crossing the street.

[13] We concur with the contention of the defendant that the plaintiff's intestate could not rely on the assumption that the motorman on car No. 53 would observe the law, to excuse him from exercising ordinary care for his own safety; and the jury were instructed that Loving's right to recover on account of the defendant's negligence was conditioned upon his exercising such care as a man of ordinary prudence, acting prudently, would have exercised under the circumstances.

[14, 15] But we dissent from the contention that, under the circumstances of this case, the failure of the decedent to wait until car No. 19 had gone far enough on its way to uncover the view of the southbound track for a long distance, constituted negligence as a matter of law.

Street railway companies have no right to demand that pedestrians, or others traveling the streets of a city, shall be subjected to unnecessary or unreasonable delays. The rights of the public and the street car are the same at the street crossings. And while the fact that the street car can run only on its track gives it the superior right between street crossings, this superior right does not deprive those on foot or in vehicles of the right to cross the car tracks, or travel along and upon them in front of a moving car, at their pleasure, pro-

vided they do not obstruct the cars and it is compatible with ordinary prudence, under all the circumstances, for them to do so.

It is in evidence that Loving was in eighteen feet of the rear of the car, and that he "leaned over like he was looking around the street car," as he curved and "went this way" (indicating). That he "stopped and kind of looked around and cut his car around like that;" that he was peeping around and "looking all the time." He was evidently listening also.

Defendant relies, for his contention last above referred to, on *Seis* v. *United Rys. Co.* (Mo. App.), 217 S. W. 324; *Van Cleave* v. *United Rys. Co.* (Mo. App.), 181 S. W. 1084; *Bardshar* v. *Seattle Elec. Co.*, 72 Wash. 200, 130 Pac. 101; and *Winter* v. *United Rys. & Elec. Co.*, 115 Md. 69, 80 Atl. 651, 652. These cases are not controlling here, as they are easily differentiated from the case at bar.

Seis was approaching, at right angles from the west, a double track street car line. Just before reaching the first track a car passed going south. He attempted to cross the tracks immediately in the rear of this car. After coming within one hundred feet of the tracks he neither stopped, listened nor looked for a car, except directly in front of him, until the front end of his automobile reached a point only two feet from the first rail of the northbound track, when he first saw the northbound car, which collided with his automobile, approaching at twenty-five miles an hour.

Van Cleave, while driving his automobile at a speed of ten miles an hour, suddenly turned out from behind the westbound car and came upon the eastbound track, upon which, as he knew, eastbound cars were operated, without taking any precautions whatever for his own safety. He acted upon the supposition that another

eastbound car would not follow so closely upon the one which had passed him shortly prior thereto, and was struck by the eastbound car.

Bradshar's chauffeur testified that from the time the southbound car passed him in the middle of the block between Pike and Union streets there was no car ahead of him and nothing to obstruct his view down First avenue for eight blocks, but admitted that he did not look to see if any cars were coming. As a result of his failure to look his automobile was struck by a northbound car.

In the *Winter Case* the court held that Winter was guilty of negligence, not only in failing to wait until the westbound car had gone far enough on its way to uncover the view of the track for a reasonable distance west, but also in not looking west for an eastbound car before attempting to make the crossing of the street, declaring that as that car ran on the south side of the street he could easily have avoided striking it, if he had seen it before he started across. The court further held that Winter was negligent in failing to stop his horse after he saw the car, when by stopping he could have avoided the collision.

If the courts were right in holding that the contributory negligence of the plaintiffs in these four cases barred recovery for the injuries sustained in the collisions, it does not follow that, in the instant case, where the facts are so materially different, the plaintiff's intestate was guilty of contributory negligence as a matter of law.

]16] In *Bashford* v. *Rosenbaum Hardware Co.*, 120 Va. 1, 90 S. E. 625, Judge Cardwell, speaking for the court said: "It has been repeatedly held by this court and is the rule of all jurisdictions, so far as we are advised, that whether a plaintiff in an action to recover damages

for personal injuries has been guilty of contributory negligence is a question for the jury under proper instructions from the court, and their finding will not be disturbed where the evidence is such that reasonable men might fairly differ as to whether there was such negligence or not."

Under the evidence the jury might have decided the case either way. Had they returned a verdict for the defendant, we could not have disturbed it; nor do we find any error in the record which would warrant us in setting aside the verdict and judgment for the plaintiff.

*Affirmed.*