GEORGE DANGERFIELD *v.* JAMES H. AKERS

(No. 9618)

Submitted January 16, 1945. Decided February 13, 1945.

*Fletcher W. Mann,* for plaintiff in error.
*Ashworth & Sanders,* for defendant in error.

FOX, JUDGE:

James H. Akers, the defendant below, complains of the action of the Circuit Court of Raleigh County, in setting aside a jury verdict in his favor, and granting a new trial, in a personal injury accident in which George Dangerfield is plaintiff. The case has been twice tried, the first trial resulting in a failure on the part of the jury to agree. It grows out of a traffic accident, and the crucial question is which of the two vehicles involved was traveling on the wrong side of the highway, and on this point the evidence

is conflicting on practically every question of fact. The parties will be referred to as they stood in the court below.

The accident occurred on the 5th day of January, 1943, on the public highway running between Beckley and Mullens, and in the Town of Sophia, in Raleigh County, directly in front of a filling station and opposite Deem Street, which connects with the highway at that point. The plaintiff was one of two guest passengers riding in an automobile owned and operated by one N. G. Meadows, and was seated in the rear, the other guest passenger, Adams, occupying the front seat with the driver. There was snow and ice on the highway, but it was thawing, particularly in the center. Meadows was operating his automobile in the direction of Mullens. He testified that up to a point some four hundred feet from the filling station he occupied the center of the highway, but at that point he turned to the right and from that time on, and at the time of the accident, kept his automobile on his right side of the highway. In this statement he is corroborated by his guests. He says that he looked ahead and saw defendant's truck beyond the filling station, on its right side of the highway, which position it kept until it neared the filling station, when it turned to the left and in the direction of Deem Street, and in the line of travel of the automobile he was driving, and too late for him to avoid the collision which followed. Both the plaintiff and Adams corroborate these statements, and in addition say that the defendant, when he turned his truck to the left, was looking in the direction of Deem Street, indicating to them an intent on his part to enter that street where, the evidence shows, he resided.

The defendant, who was the sole occupant of his one and one-half ton truck, approximately twenty-four feet in length, and who was driving in the direction of Beckley, says that he saw the Meadows automobile approaching when it was some eight hundred feet ahead of him; that the automobile turned to its left as if to enter the filling station; that he assumed it would enter the station grounds, and continued his course without paying further attention thereto; that he was driving on his right side of

the highway; that at no time did he operate his truck over the center line thereof; that when he approached the filling station the Meadows automobile appeared from his right and in his path, too late to prevent a collision between the two vehicles; that he was on his way to Mabscott, a point between Sophia and Beckley; and had no intent of entering Deem Street, and was not looking in that direction. He introduced two disinterested witnesses, one of whom, the Chief of the Police of Sophia, testified that he examined defendant's right side of the highway within a few minutes after the accident, and the same being partially covered by snow and ice, he was able to locate the tracks of the automobile driven by Meadows; that the left wheel thereof was eighteen inches over on the left or wrong side of the highway for a distance of twenty-five or thirty feet back of the automobile after it was found after the collision; that Meadows had chains on his automobile, which made it possible to trace its tracks. Another witness, who examined the highway at the same time, says that the tracks of the Meadows automobile were apparently two and one-half to three feet to the left of the center, in the direction in which the same was traveling.

A number of witnesses, introduced by both the plaintiff and the defendant, testified that the speed of the two vehicles involved was around fifteen miles per hour, and all testified that both vehicles were struck on their left front fender. The evidence as to the position of the vehicles on the highway, when they came to rest immediately after the collision, is rather unsatisfactory, but we think this much is clear: the truck of the defendant was extended diagonally across the highway, and its front may have been across and to the left of the center of the highway in the direction it was traveling. The plaintiff's automobile was likewise in a diagonal position across the highway, and apparently on the right side thereof when looking in the direction of Mullens. The defendant says that the collision caused the front of his truck to swerve to his left some two feet. The vehicles evidently collided

with some force, and the highway being partially covered with ice and snow, and, necessarily, the left side of the two vehicles being near the center of the highway, their exact position thereon after the accident may have been caused by the force of the collision and the condition of the road, and, therefore, throws little light on the decision of who was on the wrong side of the road.

One of these two vehicles had to be on the wrong side of the highway, or both so near the center thereof as to cause the collision between the parts of the vehicles which extended over the wheels thereof. The alternative mentioned is not suggested by the record before us. If, as plaintiff contends, the Meadows automobile was on his, Meadows', right side of the center line of the highway, then to produce the collision the defendant's truck must have been on the wrong side thereof; if, on the other hand, as defendant claims, his truck was on his right side of the highway, then the automobile in which plaintiff was riding must have been on the wrong side thereof. These premises being inescapable, the question arises, which vehicle was on the wrong side of the highway? If that of the defendant, it was negligence on his part; but if the Meadows automobile, then the defendant was not negligent, and the plaintiff is not entitled to recover in this case. The recovery, if any, must, in such circumstances, come from the negligent owner and operator.

This was the question the jury had to decide, and it was purely a jury question, subject, of course, to the right and power of the trial court to set aside any verdict returned as plainly wrong, or without any evidence to support it. We cannot say that there was no evidence to support the verdict; nor, had the verdict been in favor of the plaintiff, could we say that there was no evidence to support it. The plain conflict in the testimony on the material and decisive fact involved did not, in our opinion, warrant the trial court in setting aside the verdict on any question arising out of the facts.

At this late day, it would seem unnecessary to dwell at any length on the power and duty of trial courts, and this

Court, with respect to verdicts of juries on questions of fact, where they have been properly instructed by the court on matters of law, and there is conflict in the evidence. Probably the last case decided by this Court, where this question was discussed in a general way, is *Ware* v. *Hays*, 119 W. Va. 585, 195 S. E. 265. There a verdict was returned by the jury, the same set aside by the trial court, and on writ of error in this Court the ruling of the trial court was reversed, the verdict reinstated, and judgment entered. We there held:

> "Where a case involving conflicting testimony and circumstances has been fairly tried, under proper instructions, the verdict of the jury will not be set aside unless plainly contrary to the weight of the evidence, or without any evidence to support it."

> "Upon a motion to set aside a verdict, the evidence of the party prevailing therein will be most favorably considered, and doubts arising from conflicting testimony will be resolved in his favor."

> "Where the verdict of a jury has been improperly set aside by the trial court, this court will reinstate the verdict and render judgment thereon."

We did not state any new principles of law in that case, but merely applied what we believed to be the correct rule, based on former decisions, which were cited in the opinion, and which need not be again referred to. It suffices to say that the finding of a jury in a case such as that at bar, will not be set aside unless plainly wrong, or without any evidence to support it, and this ruling should be binding, not only on trial courts, but on this Court as well. We have often held that our own disagreement with a verdict is not alone sufficient to warrant us in setting it aside, and, of course, the same principle applies to trial courts. Whether the trial court set aside the verdict by reason of its disagreement on the facts, we do not know, as no reasons are given for its action.

But where a trial court sets aside the verdict of a jury,

and the correctness of its action is tested in this Court, the weight of the verdict is lessened to the extent that we have the opinion of the trial court contrary to that of the jury as expressed by its verdict. This does not require us to give more weight to the opinion of the trial court than to the verdict. The verdict still stands as a finding of fact, and will not be vacated unless plainly wrong, or without any evidence to support it. Naturally, the approval of the jury verdict by a trial court adds to the weight which should be given thereto; and the disapproval detracts therefrom; but in the final analysis, when a verdict is tested in this Court, we must inquire whether the trial court, in setting it aside, improperly applied the law which should have governed it when passing on a motion to set aside. Another consideration often mentioned is that setting aside a verdict, and granting a new trial, at the instance of a party to the litigation, does not have the finality which the approval of a verdict carries. This, of course, is true; but we cannot afford to give that consideration too much weight, because we should not adopt a rule which prolongs litigation merely to give some litigant a chance to better his case. Few cases are tried where, on a second trial, counsel for litigants do not find some opportunity to better their case, either by the introduction of new testimony, or in the method of presentation. Considering the whole matter, we are of the opinion that on the question of facts involved, the trial court was not warranted in setting aside the verdict returned by the jury.

But there is another question, involved in the giving of instruction No. 7, which requires consideration. That instruction reads as follows:

"The Court instructs the jury that the plaintiff Dangerfield could not abandon the use of his own facilities and entrust his safety entirely to others. It was his duty, if he had opportunity to do so, to learn of the danger and avoid it if practicable; and if the jury believe that the plaintiff was seated in Meadows' automobile where he could see ahead in the direction of defendant's truck and that by looking he could have seen the danger

in time to have taken effective precaution to avoid it, and if you further believe he failed to do so and to take any precaution for his own safety, then the plaintiff cannot recover even though the defendant was negligent, unless the defendant by using ordinary care could have discovered the negligence of the plaintiff, if any, in time to avoid its consequences."

The specific objections thereto were that there was no evidence that the plaintiff in this case did anything less than he should have done, or evidence of contributory negligence. There is no such objection to the form of the instruction, but if there was we see no prejudicial error therein by reason of its form. It merely states the duty of the plaintiff to avoid danger if practicable, and to take necessary precautions to avoid danger, if possible, injecting at the last what is known as the last clear chance doctrine, which we do not think arises in this case. The extent of a person's duty in any situation is not dependent on whether he is or is not a prudent person. It would not do to say that a careless or imprudent person was under a less burden of duty than a prudent person. The specific objection that there is no evidence of contributory negligence is probably well taken. We do not think the evidence shows that the plaintiff was in any wise negligent, or that there was anything he could have done to prevent the accident, or save himself from the results thereof. While a guest passenger must take reasonable precautions for his own safety, this duty rests upon him only when he has a reasonable opportunity to take the steps necessary to protect himself. This particular accident covered mere seconds of time, and the plaintiff had no opportunity, as we see it, to warn his host driver as to any negligence of which he may have been guilty. However, an attempt was made to show by evidence that the alleged negligence of Meadows could be legally attributed to the plaintiff, and in the giving of instruction No. 2 offered by the plaintiff, this evidence is recognized because the last phrase of the instruction is: "* * * unless you believe from all the evidence in the case that he (the plaintiff) was guilty

of contributory negligence which contributed to his own injuries." And in instruction No. 3, offered by the plaintiff, the jury was told, in effect, that the negligence of Meadows, if any, did not excuse the defendant from liability, where there was no fault on the part of plaintiff. This gives rise to the application of a principle of law which is announced in *State* v. *Calhoun,* 67 W. Va. 666, 69 S. E. 1098, wherein it is held:

> "Though there be error in instructions given on behalf of the prevailing party, yet the judgment will not for this reason be reversed if it appears that the same error was introduced into the record by instructions given at the instance of or was invited by the other party."

And in the case of *Kimball* v. *Friend,* 95 Va. 125, 27 S. E. 901, it was held:

> "Objection to an instruction on the ground that there was no evidence of the facts on which it was based is waived by a party asking that the jury be directed to render a certain verdict in case of certain findings, unless said facts be also found."

This rule is supported by another Virginia case. In *Richmond Traction Co.* v. *Clarke,* 101 Va. 382, 43 S. E. 618, it was stated in the body of the opinion:

> "Both parties having asked for, and induced the Court to give, instructions upon the theory that there was no such evidence, neither will be permitted, after a verdict, to question the correctness of the instructions on the ground that there was such evidence. A party cannot invite the Court to commit an error, and then complain of it."

We think the same principle applies to a case where there being no evidence on which to base instructions, instructions were given at the instance of both parties on the assumption that there was such evidence.

But counsel for plaintiff, in an effort to avoid the force and effect of these decisions, say that they do not apply

in this case, for the reason that the plaintiff was compelled to ask for instructions Nos. 2 and 3, to meet a contention of the defendant, and that without the language referred to the instructions would not have correctly stated the law. We do not think this position is tenable. All instructions are based upon evidence. Slight evidence will generally authorize the court to give an instruction presenting the theory of a litigant based thereon. But where there is no evidence on a given question, there is never any occasion to give an instruction thereon. Therefore, if the plaintiff's contention that there was no evidence of negligence on the part of the plaintiff be upheld, then it was not necessary for the plaintiff to refer to the plaintiff's negligence or fault in his instructions Nos. 2 and 3. If, however, there was error in the giving of instruction No. 7 on the part of the defendant, by reason of lack of evidence on which to base it, we do not think the plaintiff can now take advantage thereof. Finding no error in any other of the court's instructions, we conclude that the jury was properly instructed on all other points of the case.

We have not given consideration to some of the questions raised, involving testimony as to the physical condition of the plaintiff, allegedly resulting from the injuries sustained by him in the accident in question. The jury having found a verdict for the defendant, is assumed to have found that verdict solely upon the testimony touching the facts surrounding the accident. Nothing in the other testimony in the case justifies the assumption that the evidence bearing upon plaintiff's physical and mental condition had any influence upon the verdict.

The judgment of the Circuit Court of Raleigh County in setting aside the verdict of the jury will be reversed, and this Court will reinstate the verdict, and render judgment in favor of the defendant.

*Reversed; verdict reinstated; judgment entered.*