# Richmond.

## R. G. LASSITER & COMPANY, A CORPORATION, V. GEORGIA JEANNETTE GRIMSTEAD, INFANT, BY NEXT FRIEND, ETC.

### April 29, 1926.

1. STREETS AND HIGHWAYS—*Street Contractors—Liability of Contractors for Injury—Evidence to Show Responsibility of Contractors—Case at Bar.*—In the instant case plaintiff, an infant, was injured from coming in contact with a board from which a rusty nail protruded at a point in a street which was being repaired by street contractors. Defendant contended that there was no evidence that defendant had anything to do with the board with the nail in it on which plaintiff fell. There was evidence to show that the old boards containing the rusty nails which were in a barrier and near the walkway at the point of the accident were dug up by a steam shovel operated by the defendant and were left by the defendant in the position they were at the time of the accident. There was other testimony that boards with nails sticking out of them were lying along the board walkway upon which plaintiff fell and the evidence was uncontradicted that defendant was the only one who had operated a steam shovel at the street crossing in question. Defendant had assumed the obligation to keep the crossings of intersecting streets in a safe condition during the progress of their work.

    *Held:* That the question of defendant's liability for the instrumentality which produced the injury was a question for the jury to determine and the jury were justified in finding that defendant was responsible for the board with the nail which caused the injury.

2. STREETS AND HIGHWAYS—*Street Contractors—Liability of Contractors for Injury—Reasonably Safe Walkway—Anticipation of Injury.*—In the instant case, an action against street contractors for injury to pedestrian while crossing the street upon a board walkway, defendant contended that the street was reasonably safe for pedestrians to use. The walkway consisted simply of loose boards laid flatly on the ground and the evidence clearly showed that it was in very bad condition. Boards with nails in them were lying along the board walkway and plaintiff's injury was caused by falling and striking a nail in one of these boards.

*Held:* That the defendant ought to have anticipated that the nails in the boards lying along the walkway and in a barrier erected by defendant parallel to the walkway and near it were liable to cause injury to persons using the walkway, and that the action of defendant constituted negligence.

3. Streets and Highways—*Street Contractors—Liability of Contractors for Personal Injury—Walkway Placed by City—Case at Bar.*—In the instant case street contractors under their contract with the city undertook to provide temporary street crossings and keep them in good condition wherever practical during the progress of their work.

*Held:* That the contractors were responsible for the condition of a temporary walkway at a street crossing even though it had been placed there by the city.

4. Negligence—*Anticipation of Injury—Liability for Natural Consequences.*—When once it has been determined that an act is wrongful or negligent, the guilty party is liable for all the consequences which naturally flow therefrom. The precise injury need not have been anticipated. It is enough if the act is such that the party ought to have anticipated that it was liable to result in injury to others.

5. Negligence—*Child Incapable of Contributory Negligence—Street Contractors.*—Where in an action against street contractors for injury to plaintiff at a temporary street crossing, it was conceded that plaintiff on account of her age (seven years) and lack of experience was incapable of contributory negligence, how she happened to fall on the nail which injured her, whether because of the uneven or insecure condition of the walkway, or through her own negligence, is immaterial.

6. Streets and Highways—*Street Contractors—Liability of Contractors for Injury—Case at Bar.*—In the instant case plaintiff, an infant, brought an action for injury against a city and street contractors. Judgment was entered against the contractors but in favor of the city. The street contractors had laid a temporary walkway of loose boards across the street close to and parallel to a barrier. The boards used in the barrier contained a number of large rusty nails and there were other boards of the same description lying in the mud at the place of the accident. The plaintiff, a little girl seven years old, came in contact with a large nail protruding from one of the boards and received a painful wound which developed an infection. The contractors in their contract with the city had assumed liability for negligent injuries during the progress of their work.

*Held:* That the contractors were liable.

7. Judicial Notice—*That Board with Nail in it is Capable of Producing a Serious Wound—Case at Bar.*—It is a matter of common knowledge

that an ordinary nail fastened in a board, and especially one that has been buried in the soil, is capable of producing not only exceedingly painful wounds, but injuries which frequently result in the most serious consequences. And in the instant case in leaving boards with rusty nails sticking out of them lying on the ground by the side of a walkway especially provided for those who desired to cross the street, and in the barrier near said walkway, the defendant was guilty of negligence which renders it liable for the injuries suffered by the plaintiff in consequence thereof.

8. STREETS AND HIGHWAYS—*Street Contractors—Leaving Material in Street—Obstructing Street.*—A contractor engaged in repairing or constructing a city street has the right to place and allow to remain in the street, for a reasonable time, material that is needed for the work of construction or repair, provided reasonable care is exercised by the contractor to avoid obstructing the public in the use of the street, and to make it safe against accidents, but the contractor has no right under any circumstances to place in the streets of a city obstructions or dangerous agencies which are not reasonably necessary for the work, and if he does so he is subject to the same liability that any other person would be for accidents caused by such obstructions or agencies.

9. STREETS AND HIGHWAYS—*Obstructions—Public Nuisance.*—That encroachments or obstructions upon a highway *per se* constitute a public nuisance, even when they do not operate as an obstruction to travel, is well settled, and it follows that the same is true of anything, which interferes unreasonably or unnecessarily with its use by the public or which makes the highway more dangerous for travelers thereon.

Error to a judgment of the Circuit Court of Norfolk county, in a proceeding by motion for a judgment for damages. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*S. L. Sinnott* and *Ernest S. Merrill*, for the plaintiff in error.

*Daniel Coleman, Berry D. Willis*, and *Q. C. Davis, Jr.*, for the defendant in error.

CHINN, J., delivered the opinion of the court.

This is an action brought by Georgia Jeannette Grimstead, an infant, by her father and next friend, A. L. Grimstead, against the city of South Norfolk and R. G. Lassiter & Company, to recover damages for a personal injury alleged to have been caused by the negligence of the above mentioned defendants. Upon the trial of the case in the court below the jury found in favor of the city of South Norfolk, but assessed damages against the co-defendant, R. G. Lassiter & Company, in the sum of $1,000.00, and judgment was entered on said verdict accordingly. R. G. Lassiter & Company now bring the case here upon a writ of error to said judgment.

The parties will be referred to according to the positions they occupied in the trial court.

It appears that R. G. Lassiter & Company entered into a contract with the city of South Norfolk to excavate and pave a certain street in said city known as Chesapeake avenue, which intersects and crosses Jefferson street. By the terms of the contract the said contractor agreed to be held responsible for all injuries to persons "caused by or resulting from the negligence of himself, his employees or agents during the progress of the work, or connected with the prosecution thereof, whether within the limits of the work or elsewhere;" to provide and keep in good condition temporary approaches to and crossings of intersecting streets and sidewalks; and to provide and maintain "such barriers, 'streets closed' signs, red lights and watchmen as may be necessary to prevent voidable accidents to residents and to the public."

For a week or more prior to the injury complained of the defendant company, in preparing for the paving it was to do, had, by means of a steam shovel which it was operating, been engaged in excavating Chesa-

peake avenue within its intersection with Jefferson street; and the crossing over Jefferson street at said intersection having become very wet and muddy, in consequence of the work and rainy weather, a narrow walkway of loose boards had been laid from the northwest to the southwest corners of the last named street for the use of pedestrians crossing the same. Close to and parallel with this walkway a "barrier" had also been placed in Jefferson street, which, at the place of the accident, consisted of a barrel, with several loose boards extending therefrom to the ground within a foot or eighteen inches of said walkway.

It further appears that the boards used in the barrier at this point contained a number of very large and rusty nails projecting out from two to three inches, and there is also abundant evidence that there were other boards of the same description lying in the mud at the place of accident, about a foot from the temporary board walkway, and between said walkway and the barrier.

In crossing Jefferson street on the walkway above described and just before reaching the southwest corner of said street, the plaintiff, a little girl just seven years of age, came in contact with a large nail protruding from one of the boards hereinbefore referred to, thereby receiving an ugly and painful wound in her leg which developed an infection and caused her serious trouble.

The only error assigned by the defendant is that the trial court erred in refusing to set aside the verdict of the jury on the ground that the same is contrary to the law and the evidence.

It is first contended that there is no evidence to show that defendant "had anything to do with the board with the nail in it upon which plaintiff fell, or

that it was responsible for the placing of the board in the position it was at the time the plaintiff fell upon it."

[1] We do not think this position is tenable. There is evidence, both direct and circumstantial, tending to show that the old boards containing the rusty nails, which were in the barrier and in the mud by the board walkway, as hereinbefore stated, one of which caused plaintiff's injury, were dug up out of Chesapeake avenue by the steam shovel operated by the defendant in the excavation of that street, and were left by the defendant in the position they were at the time of the accident.

S. H. Dennis, one of plaintiff's witnesses, testified that, at the time plaintiff received her injury, Jefferson street at the intersection with the west side of Chesapeake avenue was in "terrible condition" on account of the work being done; that the steam shovel operated by defendant tore up a number of old boards with nails in them at the southwest corner of Jefferson street and Chesapeake avenue, which remained there during the time defendant was excavating—"a month or more." He further testified in part as follows:

"Q. I am asking you to tell what you know?

"A. I have lived there for years. There was a sidewalk there probably years ago, and it has covered up these old boards, and they were scooped out, and of course, the boards would fall out of the scoop and lay there.

"Q. Were any of these boards laying there?

"A. Quite a good many of them; yes, sir.

"Q. With nails in them?

"A. Nails in some of them.

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

"Q. Please tell the jury whether or not there were.

any boards at the southwest corner of Jefferson street and Chesapeake avenue with nails in them on the 28th day of February, 1923?'' (The day of the accident.)

"A. Yes, sir; there were boards with nails in them at that time.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

"Q. Where were the boards?

"A. They excavated them out of the street."

Harry Hanbury, another witness for the plaintiff, testified on the subject as follows:

"Q. What was the condition of that walkway as you crossed from one side of the street, Jefferson street, going south down Chesapeake avenue from Mr. Dennis' corner toward the corner you lived on; what was the condition of the walkway across there?

"A. The condition was kinder bad because it was torn up. The contractors was digging it up out there and getting ready to pave the streets.

"Q. Were there any boards?

"A. Yes, sir; they had put some boards down there for a walkway to keep from getting muddy.

"Q. Do you know who put the boards there?

"A. No, sir; I don't.

"Q. How long had boards been there at the time that this little girl was injured?

"A. I couldn't say positively, but I judged around two or three days it was anyhow. I could not say positively.

"Q. What else did you see there outside of this board walkway across there?

"A. Where they were digging, and the machine was digging down there and it had torn up everything, and there was some boards laying around there, and mud.

"Q. With reference to this board walkway, these

boards you say you saw there, how far were they lying on the ground?

"A. I guess about a foot, laying about a foot from the sidewalk. I never paid much attention.

"Q. What was the condition of the boards; were they old used boards or new boards?

"A. They were old boards. It looked like they had dug them up out of the street.

"Q. It looked like they had dug them up out of the street?

"A. Yes.

"Q. What was the condition of these boards?

"A. I saw—one of them had two or three nails in it and was sticking up out of the mud in the street.

"Q. What was the size of those nails, about, Mr. Hanbury?

"A. I judge about 20d nails, old rusty looking nails.

"Q. I don't know about the penny part of it. How long would that be?

"A. Sticking up there three inches, I guess, out of the boards.

"Q. Were those nails rusty or new?

"A. They were old rusty nails, and looked like they had been in the ground a right good while; old rusty looking nails.

"Q. How close were those boards with the nails in them lying to the walkway?

"A. I judge about a foot.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

"Q. What was the position of the boards in the walkway with reference to their permanency, or how were they placed down there, Harry?

"A. You know about how a board is thrown over by machinery when the shovel would dig them up, and they would fall any sort of way."

It was testified by C. E. Barber, a witness for the defendant, that immediately after the accident he went to the "place where the little girl fell, with Mr. Lassiter's man and we looked at the board walkway and it was a nice place across there, and there was a barricade with several nails in it, 40d nails."

"The nail was bent, and we found blood on one nail and the print of her knee was in the mud. The mud would be six or eight inches deep where it happened there by this barricade, and that is all I know about it and all I have thought about it until this thing came up.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

"Q. State to the jury how that nail was bent, or tell us the condition it was in the time you saw it with the blood on it?

"A. *It was a board that had been used for a gutter box, and as it had been torn up out of the street,* by whom I don't know, *and it was laying up there with these 40d nails in it,* and they were bent this way (indicating), if the girl had went the other way she would not have snagged herself. When she fell she didn't fall on the board but against it and snagged herself with the first nail in the board unless there was one pulled out of the end. I didn't see any in the end, but the first nail was the one the little girl snagged herself with." (Italics ours.)

Other witnesses also testified that boards with nails sticking out of them were lying along the board walkway from which plaintiff fell and received her injury; and the evidence is uncontradicted that defendant was the only person who had operated a steam shovel at the street crossing in question prior to the accident, or who had caused any boards of the description mentioned to be dug out of the ground and placed at or near said walkway.

While there is some evidence that the nail causing the injury was in the barrier, the great preponderance of the evidence is that it protruded from one of the boards lying on the ground between the barrier and the walkway.

The question of defendant's connection with and responsibility for the instrumentality which produced the injury suffered by the plaintiff was a question for the jury to determine ·from all the facts and circumstances of the case; and in view of the evidence above referred to, coupled with defendant's obligation under its contract with the city to keep the crossings of intersecting streets in a safe condition during the progress of the work it was to do, we think the jury was justified in finding that the defendant was responsible for the board, with the nail which caused said injury, being in the position it was at the time the accident occurred.

[2, 3] It is next argued that the board walkway across Jefferson street was reasonably safe for pedestrians to use, and it could not have been reasonably anticipated that anyone would fall therefrom.

As hereinbefore stated this walkway consisted simply of loose boards laid flat on the ground, and the evidence clearly shows was in very bad condition. As said by one apparently intelligent and disinterested witness, "it was liable to trip and hurt anybody." You could step on one end of a board "and the other end would pop up." Although there is evidence tending to show that the city street inspector was instrumental in having the walkway placed there, it does not appear whether it was done by the city or whether the contractor was required to do so. We do not, however, consider this question material. Under its contract, the defendant undertook to provide street crossings

and keep them in good condition wherever practicable. It was, therefore, responsible for the condition of the walkway even though it had been placed there by the city.

The real question presented for determination under this last ground of error is not, however, whether the defendant was responsible for the condition of said walkway, but whether or not, in view of its condition and the surrounding circumstances, the defendant was guilty of actionable negligence in leaving or placing, as it did, the boards with the nails in them, in the place they were when the child was hurt. In other words, whether the defendant ought to have anticipated that the nails in the boards lying along side of the walkway and in the barrier were liable to cause injury to persons using the walkway under the conditions then existing. We do not feel any hesitation in saying that this act on the part of the defendant did constitute such negligence. In the case of *N. & W. Ry. Co.* v. *Whitehurst*, 125 Va. 260, 99 S. E. 568, Judge Burks, in delivering the opinion of the court, said:

[4] "The 'foreseeableness,' or reasonable anticipation of the wrongful or negligent act is not the measure of liability of the guilty party, *though it may be determinative of the question of his negligence.* When once it has been determined that the act is wrongful or negligent, the guilty party is liable for all the consequences which naturally flow therefrom, whether they were reasonably to have been anticipated or not, and in determining whether or not the consequences do naturally flow from the wrongful act or neglect, the case should be viewed retrospectively; that is to say, looking at the consequences, were they so improbable or unlikely to occur that it would not be fair and just to charge a reasonably prudent man with

them. If not, he is liable. This is the test of liability, but when liability is established the extent is to be measured by the natural and probable consequences of the negligent or wrongful act. *The precise injury need not have been anticipated. It is enough if the act is such that the party ought to have anticipated that it was liable to result in injury to others.*" (Italics supplied.)

In *City Gas Co.* v. *Webb*, 117 Va. 269, 84 S. E. 645, a quantity of illuminating gas, which had been allowed by the gas company to escape from a leaky pipe and accumulate in a sewer manhole, was ignited by the plaintiff in striking a match near the iron plate over the manhole and the plaintiff was seriously burned. The gas company urged as a defense that such an accident could not have been reasonably foreseen by it, and, therefore, no liability rested upon the company to compensate the plaintiff. Judge Harrison, in the course of his opinion in that case, said:

"This position cannot be sustained. It is not necessary to render the defendant liable that it should have been able to foresee the precise manner in which the accident happened. It is enough if injury to another was reasonably to be apprehended as a result of the negligent conduct."

The learned judge also quoted from the case of *Foster* v. *Chicago, etc., Co.*, 127 Iowa 90, 102 N. W. 424 (4 Ann. Cas. 150), as follows:

"Doubtless the particular situation might not have been foreseen, but this is not essential in making out a charge of negligence. Accidents, as they occur, are seldom foreshadowed; otherwise many would be avoided. If the act or omission is of itself negligent and likely to result in injury to others, then the person guilty thereof is liable for the natural consequences

which occurred, whether he might have foreseen it or not. In other words, if the act of omission is one which the party ought, in the exercise of ordinary care, to have anticipated was likely to result in injury to others, then he is liable for any injury proximately resulting therefrom, although he might not have foreseen the particular injury which did happen." See also *Tripp* v. *Norfolk*, 129 Va. 566, 106 S. E. 360.

. [5, 6, 7] Since it is conceded that the plaintiff, on account of her age and lack of experience, was incapable of contributory negligence, how she happened to fall on the nail which wounded her, whether because of the uneven and insecure condition of the walkway, or through her own negligence, is not a subject of inquiry in this case. It is a matter of common knowledge that an ordinary nail fastened in a board, and especially one that has been buried in the soil, is capable of producing not only exceedingly painful wounds, but injuries which frequently result in the most serious consequences. It cannot be doubted that in leaving the boards, with these rusty spikes sticking up from them, lying on the ground by the side of the walkway especially provided for those who desired to cross the street, and in the barrier near said walkway, the defendant was guilty of negligence which renders it liable for the injuries suffered by the plaintiff in consequence thereof. It can, we think, be justly said that a reasonably prudent man ought to have anticipated that any pedestrian, however careful, was liable to lose his footing on this narrow and muddy walkway, and suffer injury by stepping or falling on one of these dangerous projections.

[8] It is true that a contractor engaged in repairing or constructing a city street has the right to place and allow to remain in the street, for a reasonable

time, material that is needed for the work of construction or repair, provided reasonable care is exercised by the contractor to avoid obstructing the public in the use of the street, and to make it safe against accidents, but the contractor has no right under any circumstances to place in the streets of a city obstructions or dangerous agencies which are not reasonably necessary for the work, and if he does so he is subject to the same liability that any other person would be for accidents caused by such obstructions or agencies.

In *Tompert* v. *Hastings Pav. Co.*, 35 App. Div. 578,. 55 N. Y. Supp. 177, the court said:

"It is urged that the appellant had the right to tear up the street, and thus make it more dangerous than it ordinarily was; and that the sole duty resting upon it was to notify passersby of the changed condition,. in order that they might take care to avoid injury. But the appellant, in the exercise of this right, was still bound to keep the place reasonably safe, regard being had to the nature of the work. *Nolan* v. *King*, 97 N. Y. 565 [49 Am. Rep. 561]. The right to make a place more unsafe than .it is normally does not authorize the contractor to make it as hazardous as he may choose. *The additional danger must be such as the nature of the repairs renders reasonably necessary.*" (Italics supplied.) See also *Portsmouth* v. *Lee*, 112 Va. 419, 71 S. E. 630, and cases cited.

And in *Hicks* v. *Smith*, 143 N. Y. Supp. 136, 139, 158 App. Div. 303, quoted with approval in *City Gas Co. of Norfolk* v. *Lawrence*, 118 Va. 557, 88 S. E. 73, and in *Louisville & N. R. Co.* v. *O'Neil*, 119 Va. 611, 89 S. E. 862, this is said:

"Nobody is permitted by the law to create with impunity a stumbling block, a trap, a snare or a pitfall for the feet of those rightfully proceeding on their way."

[9] In *Standard Oil Co.* v. *Commonwealth*, 131 Va. 830, 109 S. E. 316, the court, speaking through Prentis, J., said: "That encroachments or obstructions upon a highway *per se* constitute a public nuisance, even when they do not operate as an obstruction to travel is well settled, and it follows that the same is true of *anything* which interferes *unreasonably or unnecessarily* with its use by the public or which makes the highway *more dangerous for travelers thereon.* 13 R. C. L. 186; *Commonwealth* v. *Stodder*, 2 Cush. (Mass.) 562 [48 Am. Dec. 679]." (Italics ours.)

Among other cases illustrating the duties and liabilities of contractors while engaged in work on the streets of a city, the following may be cited as instructive:

*Law* v. *Bryant Asphaltic Pav. Co.*, 175 Iowa 747, 157 N. W. 175, 7 A. L. R. 1189; *Stockton Automobile Co.* v. *Coufer*, 154 Cal. 402, 97 Pac. 881; *Weber* v. *Union Devel. & Constr. Co.*, 118 La. 77, 42 So. 652, 12 Ann. Cas. 1012; *Stewart* v. *Hugh Nawn Contracting Co.*, 223 Mass. 525, 112 N. E. 218; *Phelan* v. *Granite Bituminous Pav. Co.*, 227 Mo. 666, 127 S. W. 318, 137 Am. St. Rep. 582; *Johnson* v. *Friel*, 50 N. Y. 679; *Charlock* v. *Freel*, 125 N. Y. 360, 26 N. E. 262; *Reilly* v. *Sicilian Asphalt Pav. Co.*, 37 N. Y. Supp. 638, 16 Misc. Rep. 65; *Anderson* v. *Fleming*, 160 Ind. 597, 67 N. E. 443, 66 L. R. A. 119; *Hoyt* v. *Independent Asphalt Pav. Co.*, 52 Wash. 672, 101 P. 367.

Defendant's counsel cite the cases of *Newport News, etc., Ry. Co.* v. *Clark*, 105 Va. 205, 52 S. E. 1010, 6 L. R. A. (N. S.) 905, 115 Am. St. Rep. 868, and *Cook* v. *Danville*, 116 Va. 383, 82 S. E. 90, L. R. A. 1915A, 1199, in support of the contention that the accident to the plaintiff in this case could not reasonably have been anticipated. In both of those cases the in-

strumentality of the injury was a three-quarter rope, stretched across the sidewalk in one instance, and across the street in the other, for the purpose of warning and protecting the public against the danger of lawful work being done. The injury was caused in both cases by the fact that party injured dashed headlong into the rope. It was held that as the rope used was not *per se* a dangerous appliance, was plainly visible to the ordinary observer, and it is a matter of common knowledge that where the use of a street is being temporarily obstructed, ropes are stretched across to give warning to the public, there was no actionable negligence.

It is manifest that neither of these cases is applicable to the case here, in relation to either the facts or principles of law involved, and they are not, therefore, controlling. The jury having found that the defendant is liable for plaintiff's injury, and there being sufficient evidence upon which to submit that issue to the jury, we are of the opinion that the judgment of the trial court should be affirmed.

*Affirmed.*