## 𝔖taunton

GLENN PHILLIPS PUTNAM v. BERO ENGINEERING AND
CONSTRUCTION CORPORATION.

September 10, 1953.

Record No. 4061.

Present, All the Justices.

The opinion states the case.

*John P. Hodgson, Benjamin W. Mears, L. H. Mears, C. A. Turner, Jr.* and *N. Wescott Jacob,* for the plaintiff in error.

*Lewis H. Hall, Jr., B. Drummond Ayres, E. Ralph James* and *Hall & Martin,* for the defendant in error.

SMITH, J., delivered the opinion of the court.

On May 3, 1950, the plaintiff, Glenn Phillips Putnam, filed his motion for judgment against the defendant, Bero Engineering and Construction Corporation, seeking the recovery of damages for personal injuries allegedly caused by the negligence of the defendant and obtained a verdict for $27,500. The trial court set the verdict aside and entered final judgment for the defendant on the ground that the verdict was contrary to the evidence and without evidence to support it and we awarded the plaintiff a writ of error.

At the time of the plaintiff's injury the defendant, a foreign corporation, was under contract with the Department of Highways of the Commonwealth of Virginia to construct about three miles of roadway on U. S. Route 13 in Accomack county, which was to constitute a link in a new road extending from the town of Accomac to the Maryland line. The new road is parallel to and on the east side of the old road so that the two roads, separated by a grass plot, form a dual highway, the new road being reserved for northbound traffic and the old road being reserved for southbound traffic.

Route 13 immediately south of the point where the defendant's construction project began is not a dual highway but consists of two lanes only, one for northbound traffic and the other for southbound traffic. In order to connect the northbound lane of the old two-lane road with the northbound portion of the new dual highway the defendant's contract provided that it would construct a semi-permanent crossover approximately 900 feet in length ex-

tending from the northbound lane of the old two-lane road at an angle of from five to ten degrees and connecting with the northbound portion of the new dual highway.

Some time prior to the plaintiff's injury the defendant had begun work on the semi-permanent crossover, but owing to adverse weather conditions the Department of Highways directed the defendant to discontinue this work and move its operations to a point farther north on its construction project. At a new location north of the place where the semi-permanent crossover was to be located the Department of Highways then proceeded to construct what is described in the record as a temporary crossover so that northbound traffic could be diverted to the new portion of the dual highway without further delay. This temporary crossover, which was not included in nor contemplated by the defendant's contract, was built by the Department of Highways at its own expense, by its own employees and without conferring or consulting with the defendant and it was thereafter maintained solely by the Department of Highways. Various warning signs and indicators were also erected and maintained by the Department of Highways at the temporary crossover in order to guide northbound traffic onto the new portion of the dual highway. In short, the defendant took no part whatever in the construction and maintenance of the temporary crossover nor did it have anything to do with the erection and maintenance of warning signs and indicators at that location.

On the afternoon of February 1, 1950, the plaintiff, a twenty-two year old sailor stationed at Norfolk, Virginia, was en route in his automobile to his home in Connecticut. When he passed through Cape Charles about 9:00 p. m., the night was very dark and it was raining. Shortly thereafter the rain increased and Putnam reduced his speed to about thirty-five miles per hour. He testified that he did not recall seeing any flares or any other type of warning nor did he remember seeing the temporary crossover. At any rate he missed the temporary crossover and continued

north on the southbound portion of the dual highway a distance of about 100 feet and then skidded to his left directly into the path of a southbound tractor-trailer truck. The resulting collision practically demolished the plaintiff's car and caused him severe personal injuries.

The decisive question in this case, as set forth in the plaintiff's pleadings, is: Did the defendant, under the terms of its contract with the Department of Highways, owe a duty to the plaintiff to (1) properly construct and maintain all necessary approaches leading from the old two-lane road to the newly constructed portion of the dual highway and (2) erect and maintain at such approaches suitable barriers, fences, signs and other protective devices, etc., as might be reasonably necessary for the safety of the plaintiff? Since our analysis of this question results in a negative answer, it will not be necessary to discuss the other alleged errors raised by both parties on this appeal.

One of the plaintiff's exhibits in the case entitled "Virginia Department of Highways Road and Bridge Specifications" (hereinafter referred to as "Specifications"), which is included in the defendant's contract with the Department of Highways, contains all the provisions of the aforesaid contract necessary to a decision in this case.

Section 108.03 of the Specifications provides in part that "The Contractor shall begin work at such points as the Engineer [the representative of the State Highway Commissioner] may direct and shall thereafter prosecute the work at such points and in such order as may be prescribed from time to time by the Engineer." Section 108.06 provides in part that "The Engineer shall have the authority to suspend the work wholly or in part, for such period or periods as he may deem necessary, due to unsuitable weather, or such other conditions as are considered unfavorable for the suitable prosecution of the work." The Specifications also provide in §§ 104.02 and 104.04 that no special work or extra work not included in the plans or specifications shall be undertaken until supplemental specifications have

been prepared by the Engineer, in the case of special work, or the basis of payment has been agreed upon, in the case of extra work. Section 105.09 further provides that any work done beyond that called for in the plans and any additional work done without the prescribed authority is deemed to be unauthorized and that for it no compensation will be paid.

From this examination of the Specifications it is clear that the Department of Highways had the authority to direct the defendant to cease work on the semi-permanent crossover and continue work elsewhere, and that the defendant had no alternative but to follow such directions. Furthermore, since the details of the temporary crossover were not included in the defendant's contract, it had no right or duty to undertake any work on that construction until it had been furnished supplemental specifications by the Engineer. The Department of Highways could have contracted with the defendant for the construction of the temporary crossover; however, it did not choose to do so but elected to do the work itself. Even if we assume that the plaintiff's injuries were proximately caused by the condition of the temporary crossover and the inadequacy of the warning signs, any liability for this condition would not fall on the defendant under the terms of its contract with the Department of Highways, because this contract did not contain any provision for the construction of the temporary crossover. Since the defendant did not undertake to do any of the work on the temporary crossover, it therefore owed no common-law duty to the plaintiff to provide a safe crossover and adequate warning signs at the point here under discussion.

The plaintiff relies on § 104.09 of the Specifications to support his contention that the defendant owed a duty to the plaintiff to "properly construct and maintain all necessary approaches leading from the old two-lane road to the newly constructed portion of the dual highway." This section relates to the construction and maintenance of temporary structures and reads as follows:

"The Contractor will be required to construct, maintain and remove all temporary structures and approaches for the use of traffic except when otherwise set up in the bidding proposal or shown on plans. The Contractor shall be responsible for all claims resulting from accidents to the public or his workmen, arising from such construction, maintenance and removal of the structure and roadway approaches.

"Plans for temporary structures and procedure for moving existing structures to temporary location, when not provided by the Engineer, shall be subject to his approval.

"The unit price bid on the permanent structure shall include the cost of the above."

There is no merit in the plaintiff's argument on this point. Section 101.00 of the Specifications defines "Temporary Structure" as "Any temporary structure or stream crossing, required to maintain traffic while constructing or reconstructing structures, or parts of structures covered by the contract. The temporary structure shall include earth approaches thereto." It is our opinion that the above definition and other provisions of § 101.00 as well as Division IV of the Specifications which deals with "Bridges and Structures" make it clear that the "temporary structures and approaches" referred to in § 104.09 have reference to the construction of temporary bridges and the approaches thereto and are in no way related to the construction of a temporary crossover such as that herein involved.

To support his other argument, that the defendant owed a duty to the plaintiff to "erect and maintain at such approaches suitable barriers, fences, signs and other protective devices, etc.," the plaintiff points to § 107.08 of the Specifications which directs the contractor to "provide, erect and maintain at all times during the progress or temporary suspension of the work, suitable barriers, fences, signs or other adequate protection, * * * ." However, that this section refers only to work being done by the contractor under the terms of his contract is made clear

by a later paragraph of the same section which provides that "The Contractor's responsibility for the maintenance of barricades and warning lights or reflectors *on any individual item of work included in the contract* shall cease when project is accepted by the Engineer as being completed." (Italics supplied.) The Specifications certainly do not contemplate that a contractor would have the responsibility to erect and maintain barricades and warning signs on an item of construction not included in the contractor's contract and on which it had not undertaken to do any work.

To further support his position the plaintiff relies on two decisions of this court, both of which are readily distinguishable from the case at bar. The first of these cases is *Lassiter & Co. v. Grimstead,* 146 Va. 773, 132 S. E. 709. In this case Lassiter & Company contracted with the City of South Norfolk to excavate and pave a certain street in that city. By the terms of its contract the contractor was to provide and keep in good condition temporary approaches to and crossings of intersecting streets and sidewalks and to provide and maintain barriers, signs, lights, and watchmen as might be necessary to prevent avoidable accidents to residents and to the public. In the course of excavating the street the contractor dug up some old boards with a steam shovel. While crossing on a walkway provided by the contractor a child was injured by a nail protruding from one of these boards. In this connection, in 146 Va., at page 785, we said, "It cannot be doubted that in leaving the boards, with these rusty spikes sticking up from them, lying on the ground by the side of the walkway especially provided for those who desired to cross the street, and in the barrier near said walkway, the defendant was guilty of negligence which renders it liable for the injuries suffered by the plaintiff in consequence thereof." This case is clearly not applicable to the facts in the case at bar for there the defendant had both a contractual and common-law duty to provide a safe passage across the street where it was engaged in carrying out the provisions of its contract.

In the other case cited by the plaintiff, *Bowers* v. *Martinsville*, 156 Va. 497, 159 S. E. 196, the Department of Highways entered into a contract with Bowers for the construction of a bridge. Bowers, without the knowledge, consent or approval of the Department of Highways, entered into an agreement with one Loving to do the actual work. Loving thereafter committed positive acts of negligence and when such condition was brought to his attention he refused to remedy the condition as a result of which the town of Martinsville sustained the damages complained of. Bowers was very properly held liable by virtue of his contract on the ground that his duty was non-delegable. However, that is not the situation in the case at bar. Here, the defendant had no duty at the temporary crossover, nor did it attempt to delegate any duty. It was expressly ordered and directed by the Department of Highways in accordance with the authority reserved in the Specifications to cease work on the semi-permanent crossover and move to another location.

It follows that the trial court was correct in setting aside the verdict and entering final judgment for the defendant, therefore, the judgment complained of herein is affirmed.

*Affirmed.*