# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## W. MORRIS, TRADING AS MORRIS JUNK & BARREL COMPANY, v. NEBRASKA PEYTON, BY J. P. PEYTON, HIS NEXT FRIEND.

### September 29, 1927.

### Absent, Christian, J.

1. VARIANCE—*Time of Making Objection—Objection after Verdict of Jury—Case at Bar.*—In the instant case, an action for negligent injury, no objection was made to any of the plaintiff's evidence on the ground of variance until after the jury's verdict, or any motion to exclude any portion of plaintiff's evidence.

   *Held:* That by failing to make timely objection, and by availing himself of full opportunity to meet the plaintiff's proof by evidence on his behalf, defendant waived any variance between the pleading and proof.

2. VARIANCE—*Time of Objection—Usual Practice.*—In case of variance between the evidence and the allegations the usual and correct practice is to object to the evidence when offered, or if it is already in, to move to exclude it, and in either event to except to an adverse ruling of the court. Attention is thus called to the discrepancy and an opportunity offered the other party to cure the objection.

3. VARIANCE—*Effect of Variance—Timely Objection.*—It is elementary law that the proof must correspond with the allegations. But to avail himself of this rule a defendant is required to make timely objection.

4. APPEAL AND ERROR—*Conflicting Evidence—Verdict Resolves Conflict.*—Where the jury found for plaintiff and the verdict was approved by the trial court, all controverted matters arising from conflicts of evidence must be resolved in favor of the plaintiff.

5. AUTOMOBILES—*Driver Inviting Boy to Ride on Fender—Case at Bar.*—The instant case was an action for negligent injury. Under the evidence the jury were justified in finding that the driver of the automobile invited plaintiff, a boy, to ride upon his truck and knowingly permitted him to stand on the fender or the running board; that while clinging to the seat of the truck plaintiff was jostled off of the moving truck while going around a corner and injured; that the truck was a light motor vehicle upon which the

vibration was greater even when moving on a street at slow speed than is the case with better built automobiles with springs and that the boy was a child with a child's lack of appreciation of danger, and the duty rested upon the driver not to expose him to the danger of injury.

*Held:* That under the circumstances defendant became charged with the duty of exercising reasonable care and caution toward the child; the finding of the jury that he failed to do so and that such failure constituted negligence and was the proximate cause of the injury should not be disturbed on appeal.

6. Negligence—*Children—Doctrine in Virginia.*—In Virginia the settled doctrine as to the capacity of a child to commit an act of negligence is that a child under seven years of age cannot be guilty of negligence, and that as to children between seven and fourteen years of age the presumption is they are incapable of exercising care and prudence and this presumption prevails unless rebutted by sufficient proof to the contrary.

7. Automobiles—*Children—Negligence—Capacity of Child to Commit an Act of Negligence for Jury—Case at Bar.*—In the instant case, an action by a child, a boy of thirteen, for negligent injury, the plaintiff was riding on the running board of defendant's automobile when injured.

*Held:* That the question as to the capacity of the child to commit an act of negligence was properly submitted to the jury.

8. Children—*Negligence—Knowledge Imputed to Defendant—Case at Bar.*— If in the instant case, an action for negligent injury by a boy thirteen years of age, it was *prima facie* as a matter of law to be implied that the child did not possess a sufficient degree of realization of the peril to which it was exposed in riding in a position of known danger, then knowledge of that fact might well be imputed to the defendant by the jury.

9. Automobiles—*Dangerous Instrumentalities—Riding on Running Board.*— While it is held that an automobile is not of itself such a dangerous agency as to make applicable to it the rules requiring extraordinary care in the use of instrumentalities dangerous *per se*, yet it is a matter of common knowledge and experience that it is hazardous to ride on the fender or running board of a moving motor vehicle.

10. Children—*Turntable Cases—Rule in Virginia.*—What is known as the doctrine of the Turntable Cases has been repudiated in Virginia.

11. Automobiles—*Negligence—Trespassers—Case at Bar.*—In the instant case, an action for negligent injury, plaintiff, a child, was injured from a fall while riding on the running board of defendant's automobile, being thrown off as the automobile rounded a corner. Plaintiff and his companion testified that they were invited by the driver of the automobile to ride in return for a slight service rendered by them to the driver.

*Held:* That plaintiff was in no manner a trespasser, nor necessarily a mere licensee.

12. NEGLIGENCE—*Children—Defendant Charged with Notice of Child's Danger.*—When the relation existing between plaintiff, a child, and the defendant was, at the time of the injury, such as to charge defendant with a knowledge of the child's situation and with a duty of not exposing it to a peril which the child was not as likely to realize as could an adult, then a breach of such duty may constitute negligence.

13. AUTOMOBILES—*Duty Owed to Guests.*—The express or implied duty of the owner or driver to the occupant of the car is to exercise reasonable care in its operation not to unreasonably expose to danger and injuries the occupant by increasing the hazard of that method of travel. He must exercise the care and diligence which a man of reasonable prudence, engaged in like business, would exercise for his own protection and the protection of his family and property—a care which must be reasonably commensurate with the nature and hazards attending this particular mode of travel.

14. AUTOMOBILES—*Child Permitted to Ride on Running Board—Questions for Jury—Case at Bar.*—In the instant case, an action for negligent injury, plaintiff was injured while riding on the running board, at the invitation of the driver, of defendant's automobile. Plaintiff was under fourteen years of age.

*Held:* That the trial court did not err in submitting the issues in the case to the jury; and that the jury, having seen and heard the witnesses with opportunity to observe the bearing and degree of intelligence of the plaintiff boy, and their verdict having been approved by the trial court, the appellate court should not disturb the judgment.

15. QUESTIONS OF LAW AND FACT—*Negligence.*—Courts constantly have to refer to juries the question of what is reasonable conduct, or reasonable prudence, under all the circumstances of the case, with no other guide than their own judgment and conclusion as reasonable men.

Error to a judgment of the Circuit Court of the city of Newport News, in a proceeding by motion for a judgment for damages. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Rixey & Rixey,* for the plaintiff in error.

*R. H. Pree,* for the defendant in error.

CRUMP, P., delivered the opinion of the court.

Peyton, plaintiff in the trial court, Circuit Court of the city of Newport News, recovered of Morris, the defendant in the case, $500.00 as damages for negligent injury.    Morris assigns error.

The only assignment of error is to the ruling of the trial court refusing to set aside the verdict of the jury, and is stated in the petition for writ of error as follows:

"That the trial court erred in refusing to set aside the verdict and enter judgment for the defendant, on the ground that the verdict was contrary to the law and the evidence and without evidence to support it, and on the grounds that there was no evidence of negligence on the part of the defendant and no causal connection between any act or omission of the defendant and the injury, and that the *allegata* and *probata* did not correspond in that the notice of motion the plaintiff laid as his sole ground of negligence the alleged negligent method of operation of the truck while under the evidence his only claim of negligence was in the evidence that the defendant's driver allowed the plaintiff to ride on the running board while moving at five miles an hour."

Two subjects of complaint are thus presented to this court for consideration:    (1) That there was a variance between the allegations of the notice of motion for judgment and the proof offered on the trial; (2) that the verdict was contrary to the law and evidence and without evidence to support it.

The defendant filed no demurrer to the notice of motion, and made no demand for a bill of particulars of plaintiff's claim.

[1, 2]. No objection was made to any of the plaintiff's evidence on the ground of variance until after the

jury's verdict. A careful examination of the record fails to disclose any such objection, or any motion to exclude any portion of plaintiff's evidence. If any such question had been raised during the course of the trial, the court would doubtless have allowed the plaintiff, if essential, to amend the notice of motion, pursuant to the settled practice under section 6250 of the Code. In case of variance between the evidence and the allegations the usual and correct practice is to object to the evidence when offered, or if it is already in, to move to exclude it, and in either event to except to an adverse ruling of the court. Attention is thus called to the discrepancy and an opportunity offered the other party to cure the objection.

[3] It is elementary law that the proof must correspond with the allegations. But to avail himself of this rule a defendant is required to make timely objection.

If there was in any particular a variance between the notice and the proof in this case, the defendant waived it by failure to make timely objection, and by availing himself of full opportunity to meet the plaintiff's proof by evidence on his behalf. Under such circumstances the objection to the verdict of the jury on this ground presents nothing for consideration by the appellate court. *Du Pont Engineering Co.* v. *Blair*, 129 Va. 423, 106 S. E. 328; *Foltz* v. *Conrad Realty Co.*, 131 Va. 496, 109 S. E. 463; *Virginia & S. W. Ry. Co.* v. *Bailey*, 103 Va. 205, 227, 49 S. E. 33; Burks' Pl. & Prac. (2nd ed.) pages 587–588.

[4] In order to determine whether the trial court erred in refusing to set aside the verdict on the ground that it was contrary to the evidence, it is necessary to make a brief statement of the facts. As the jury found for the plaintiff and the verdict was approved

by the trial court, all controverted matters arising from conflicts of evidence must be resolved in favor of the plaintiff. *Crowell v. Duncan*, 145 Va. 489, 134 S. E. 576.

The plaintiff was a negro boy who became thirteen years of age on October 24, 1925, and the injury complained of occurred the following month, November 27, 1925. The defendant conducted a junk and barrel business in Newport News, and on the day in question the driver of a truck used in the business had driven the truck to a city dump near Warwick avenue at its intersection with 15th street to get some rags. On his arrival he found the truck had begun to heat up and needed water. At the time he reached the dump the plaintiff and a companion boy named Holloway, eleven years of age, were playing about the place. The two boys assisted the driver in getting the water, whereupon he gave the Holloway boy a nickel, presumably for both the boys. The truck was then headed up Warwick avenue, the accident occurring two blocks further, about 17th street. The driver cranked the truck and the two boys got on the truck with him, the plaintiff intending to get off at 16th street. The driver testified that the boys asked for a ride up the street, and he told them "all right" and they got on. But the plaintiff testified that the driver promised to give them a ride for getting the water, offered to give them a ride, and he did not get on the truck without being asked or told to do so. The Holloway boy sat on the seat of the truck to the right of the driver. The plaintiff stood on the running board of the truck, and his account of the accident is as follows:

"Q. And you were on the right hand side of the machine?

"A. Yes, sir.

"Q. Standing on the running board, you say?

"A. Yes, sir.

"Q. Is there any question about that? Are you sure you were standing on the running board or were you sitting down?

"A. I was standing on the running board.

"Q. Did you stand on the running board and ride from the place at which the truck was to 17th street?

"A. Yes, sir.

"Q. Did you stand there all the time during the time you were on the truck?

"A. Yes, sir.

"Q. Could you see Bradshaw from where you were standing?

"A. Yes, sir.

"Q. Could he see you?

"A. Yes, sir.

"Q. When you said to him that you wanted to get off at 16th street, what happened?

"A. He had passed 16th street and was coming to 17th street and I told him I wanted to get off right here and he told me not to jump off until he stopped.

"Q. Where were you then? Were you at 16th street or 17th street when he told you?

"A. Just had passed 16th street.

"Q. Then what did you do?

"A. I was waiting until he could stop the truck and before he could stop I fell off.

"Q. Had the truck turned the corner then?

"A. Yes, sir.

"Q. Or were you just turning?

"A. He was turning into 17th street.

"Q. You were not barefooted at that time, were you?

"A. No, sir.

"Q. What kind of shoes did you have on?

"A. I had on my football shoes, wood up under the bottom."

Again he says in the course of his evidence:

"Q. How far beyond 16th street did you go?

"A. One block.

"Q. Then what happened?

"A. I was thrown off.

"Q. You were thrown off at 17th street, is that right?

"A. Yes, sir."

The evidence of the driver was to the effect that the boys asked for a ride, that they got on the truck and both sat on the seat with him; that just before they reached 17th street the plaintiff left the seat and got out on the fender or running board, and he told the boy not to jump off, but wait until he stopped, but the boy did jump off and so was run over and injured. The jury, however, did not accept his testimony. The Holloway boy as witness for the defendant testified that he got on the seat with the driver, and the plaintiff "got on the fender and put one hand on the fender and the other inside the truck on the seat;" that the plaintiff was never in the seat at all, but was standing on the fender as he described; he said further that the plaintiff jumped off, and in some other respects disagreed with both the plaintiff and driver.

There is no testimony as to the character of the truck other than a statement of the driver that it was "just a Garford truck." The driver testified that the truck was travelling about five miles an hour at the time of the accident, and this was the only reference to the speed by any witness. It is a fair inference from the testimony that the plaintiff, a negro boy just thirteen years of age, was of the average degree of

intelligence and alertness of colored children of that age, though it appears that he was in a lower grade at school than the other boy, who was only eleven years old. No question is raised by the testimony or in argument here as to the authority of the driver, who was a colored man twenty-one years of age with several years' experience as a truck driver, the defendant's liability for the conduct of the driver as his agent, if the driver was negligent, is conceded. The front wheel of the truck ran over the boy; his leg was broken and he was rather severely injured.

[5] Without going further into the details of the evidence, our conclusion is that the jury were justified in finding that the driver invited the boy to ride upon the truck and knowingly permitted him to stand on the fender or running board, where his hold was necessarily precarious while the truck was moving; that while thus clinging to the seat of the truck with one hand and to some part of the fender with the other hand, he was jostled off the moving truck while going around a corner and injured; that the truck was a light motor vehicle upon which the vibration, jarring, swaying and roughness of motion, even when moving on a street at slow speed, are greater than is the case with the better built passenger automobiles with their springs; that the boy was to all appearances a child, with a child's lack of appreciation of danger, and the duty rested upon the driver not to expose him to the danger of injury.

Can there be a recovery in such a case?

[6-9] If under such circumstances the defendant became charged with the duty of exercising reasonable care and caution toward the child, then the finding of the jury that he failed to do so and such failure constituted negligence and was the proximate cause of the

injury, should not be disturbed. If the plaintiff had been an adult, doubtless his remaining upon the running board would have been contributory negligence, barring a recovery. The question as to the capacity of the boy to commit an act of negligence was properly submitted to the jury. In Virginia the settled doctrine in this respect is that a child under seven years of age cannot be guilty of negligence, and that as to children between seven and fourteen years of age the presumption is they are incapable of exercising care and prudence and this presumption prevails unless rebutted by sufficient proof to the contrary. *Stanley* v. *Tomlin*, 143 Va. 187, pages 197–198, 129 S. E. 379; *Richmond Traction Co.* v. *Wilkinson*, 101 Va. 394, 43 S. E. 622. If in this case it was *prima facie* as a matter of law to be implied that the child did not possess a sufficient degree of realization of the peril to which it was exposed in riding in a position of known danger, then knowledge of that fact might well be imputed to the defendant by the jury. While it is held that an automobile is not of itself such a dangerous agency as to make applicable to it the rules requiring extraordinary care in the use of instrumentalities dangerous *per se* (*Cohen* v. *Meador*, 119 Va. 429, 89 S. E. 876), yet it is a matter of common knowledge and experience that it is hazardous to ride on the fender or running board of a moving motor vehicle, both because of the danger of being thrown off in the ordinary running of the car and because of the greater likelihood of being hurt in case of an accident. This was recognized by the driver in stoutly denying that the boy was riding, the whole distance, on the running board.

The physician also testified, in a natural manner, when giving evidence as to an occasion upon which the driver asked him how the boy was getting on, "and

I took occasion to ask him how this thing happened, and I asked him was it right that the boy was on the running board and he said yes. I warned him he had better be careful about letting children ride on the running board, and he said he was sorry it happened and he was going to do what he could for the family."

[10] What is known as the doctrine of the Turntable Cases has been repudiated, and very properly so, in Virginia. *Walker* v. *Potomac, F. & P. R. R. Co.*, 105 Va. 226, 53 S. E. 113, 4 L. R. A. (N. S.) 80, 115 Am. St. Rep. 871, 8 Ann. Cas. 862.

[11] What happens to a trespasser, whether adult or infant, when upon one's property without the knowledge of the owner, involves no infringement of the maxim *sic utere tuo ut alienum non laedas*. In the instant case the child upon the automobile was in no manner a trespasser, nor necessarily a mere licensee. Numerous cases arise in which venturesome and playful children climb upon railroad cars, street cars, and upon motor trucks, and in which no duty of care or only a slight duty is placed upon those in charge of the vehicle.

[12] When the relation existing between the child and the defendant was, at the time of the injury, such as to charge him with a knowledge of the child's situation and with a duty of not exposing it to a peril which the child was not as likely to realize as could an adult, then a breach of such duty may constitute negligence.

The law recognizes the fact that children act upon childish instincts and impulses and requires those charged with the duty of care and caution toward them to calculate upon this and take precaution accordingly. The degree of care in this situation, as elsewhere, is that known as reasonable care. 7 Thompson on Negligence, section 345.

In the case of master and servant the law clearly casts upon the master the affirmative duty of not allowing a child to remain in a position of danger. In 3 Labatt on Master and Servant (2nd ed.), section 913, it is said that the almost universally accepted doctrine is that the care to be observed to avoid injuries to children is greater than that in respect to adults, that the same discernment and foresight in discovering danger cannot reasonably be expected of them which older and experienced persons habitually employ. The recent child labor legislation displays the tendency to extend protection to children under fourteen years of age.

The jury in the instant case might have found that the boy stood in the relation of guest to the driver. The duty arising out of such a relation is the subject of a well considered note in 6 Virginia Law Review, 593. The writer there very pertinently says: "The duty of the owner of a conveyance to his guest riding with him at his invitation is a question upon which the courts have only recently been called upon to pass. This is undoubtedly due to the advent and increased use of the automobile and we may look for cases involving similar questions to arise with increasing frequency in the future."

In *Avery* v. *Thompson*, 117 Me. 120, 103 Atl. 4, L. R. A. 1918-D 205, Ann. Cas. 1918E 1122, the court discusses at length the principles of law applicable to such relations. It is there said:

"Adopting, then, the modern method of statement, we think that the true rule of liability on the part of a voluntary undertaker should be this, that he be required to exercise that degree of care and caution which would seem reasonable and proper from the character of the thing undertaken," and further:

"In other words, we perceive the true rule to be that

the gratuitous undertaker shall be mindful of the life and limb of his guest, and shall not unreasonably expose her to additional peril. This would seem to be a sane, sound, and workable rule; one consistent with established legal principles and just to both parties. It leaves the determination of the issue to the jury as a question of fact."

The doctrine of a majority of the courts is thus stated in *Perkins* v. *Galloway*, 194 Ala. 265, 69 So. 875, L. R. A. 1916E 1190:

[13] "The express or implied duty of the owner or driver to the occupant of the car is to exercise reasonable care in its operation not to unreasonably expose to danger and injuries the occupant by increasing the hazard of that method of travel. He must exercise the care and diligence which a man of reasonable prudence, engaged in like business, would exercise for his own protection and the protection of his family and property—a care which must be reasonably commensurate with the nature and hazards attending this particular mode of travel."

See generally Berry on Automobile (4th ed.), section 605.

How is this doctrine to be applied when the guest is a child under fourteen years of age and therefore his capacity to care for himself is to be measured by the Virginia rule?

In chapter XIII of Berry on Automobiles (4th ed. 1924), the author devotes many pages to the subject of injuries to children in the operation of motor vehicles, citing numerous cases in illustration. Most of these cases arise from injuries upon the streets, many of them involve a question of authority and due course of employment on the part of an owner's driver, and some of them duties owing to trespassing children. In

sections 528 and 529 reference is made to children permitted to ride on the running board, and two cases are cited.

In *Ostrander* v. *Armour & Co.*, 176 App. Div. 152, 161 N. Y. S. 961, it was held that the driver of a motor truck, who left it standing, and coming back found children playing about it, was not required to search for children, unseen, on the far side of the truck; but it seems to be implied that the driver would be wanting in care if he had known there was a child on the running board and he had started off with the car and the child had fallen off.

In *Grabau* v. *Pudwill*, 45 N. D. 423, 178 N. W. 124, a boy over fourteen permitted to ride upon the running board of a Ford car was injured when the car collided with a wire fence at a curve in the road, and a verdict for him was upheld. The court holds that the boy was to be regarded as a guest, and continues:

"In fact, we can see but little difference between defendant's duty toward him as a gratuitous guest, after they acquired full knowledge of his presence on the running board, than if they had, in the first instance, invited him as their guest.

"The defendants, however, contend, before there can be any liability on their part, it must appear that they were guilty of active negligence. We do not think that rule should be applicable to a case of this character.

\*      \*      \*      \*      \*      \*      \*      \*      \*

"It appears there is sufficient evidence to show that the defendants permitted the plaintiff to ride upon the running board of the car; at least, they acquiesced in his riding there; and especially is this true, after they had left town, and before the injury happened, on their journey to Green Lake. We think there is no dispute upon this point.

"It is also clear that the boy was very young. This was an additional reason, imposing the exercise of greater care on the defendants in the operation of the automobile than if he were one of more mature years. To permit a boy of such tender years to assume and maintain a position of danger on the whole journey, a large part of which was over country roads, is substantial evidence to show, *prima facie*, the negligence of the defendants."

*La Rose* v. *Shaughnessy Ice Co.*, 197 App. Div. 821, 189 N. Y. S. 562, is a later New York case than that cited by Mr. Berry. In this case a child ten years of age was permitted to ride upon a truck, at times upon the seat with the driver and at times upon the running board. It was held that the plaintiff was not subject to the treatment of a mere trespasser, that the driver owed him a higher duty than to merely refrain from doing him a wanton wrong.

We are referred by counsel to *Higbee* v. *Jackson*, 101 Ohio St. 75, 128 N. E. 61, 14 A. L. R. 131. In that case a boy riding upon a truck was held, as against the defendant owner of the car, a trespasser, as such a situation was in direct violation of the owner's instructions to the driver, still the court held in that case that a recovery should be sustained for the reason that the conduct of the driver might be considered wanton or willful negligence while he was aware of the perilous position of the trespasser. The annotation to the case deals altogether with the question when a driver acts with authority and within the scope of his employment—a subject not involved here, but which was under consideration in *Crowell* v. *Duncan*, 145 Va. 489, 134 S. E. 576.

[14] In our opinion the trial court did not err in submitting the issues in this case to a jury, and the

jury having seen and heard the witnesses with opportunity to observe the bearing and degree of intelligence of the plaintiff boy, and their verdict having been approved by the trial court, the appellate court should not disturb the judgment.

As said by Judge Burks in *Chesapeake and Ohio Railway Company* v. *Allen*, 137 Va. page 522, 120 S. E. 158:

[15] "Courts constantly have to refer to juries the question of what is reasonable conduct, or reasonable prudence, under all the circumstances of the case, with no other guide than their own judgment and conclusion as reasonable men."

While the instant case is unusual in some of its aspects, the courts are constantly called upon to meet novel questions arising from the extensive use of motor vehicles in modern business and social life.

We think our conclusion is in harmony with the manner in which the appellate court in Virginia has applied the principles of the law of negligence in such cases as *Richmond Traction Co.* v. *Wilkinson*, 101 Va. 394, 43 S. E. 622, citing *City Gas Company* v. *Webb*, 117 Va. 269, 84 S. E. 645; *Norfolk and Western Ry. Co.* v. *Whitehurst*, 125 Va. 260, 99 S. E. 568; *Tugman* v. *Riverside and Dan River Cotton Mills*, 144 Va. 473, 132 S. E. 179; *Lassiter & Co.* v. *Grimstead*, 146 Va. 773, 132 S. E. 709; *Overstreet* v. *Security, etc., Co.*, *ante* page 306, 138 S. E. 552.

Nine instructions were given to the jury by the court, five upon request of the plaintiff and four at the instance of the defendant. As no assignment of error is made in respect to these instructions, they are not before us for review in detail. Without undertaking to approve them in the exact terms in which they are phrased, it is sufficient to say that they fairly sub-

mitted to the jury the law bearing upon the issues they were to determine.

For the foregoing reasons the judgment of the trial court will be affirmed.

*Affirmed.*