## Richmond

CULMORE REALTY COMPANY v. C. LOUIS CAPUTI.

March 5, 1962.

Record No. 5349.

Present, Eggleston, C. J., and Spratley, Buchanan, Whittle, Snead and I'Anson, JJ.

*James M. Thomson (Clarke, Richard, Moncure & Whitehead,* on brief), for the plaintiff in error.

*John G. Epaminonda* and *Alex M. Bloxton,* for the defendant in error.

I'Anson, J., delivered the opinion of the court.

The appellant, Culmore Realty Company, a foreign corporation, sometimes hereinafter referred to as Culmore, filed its motion for a declaratory judgment against C. Louis Caputi, the appellee, and others not parties to this appeal, praying that a judgment be entered declaring that it is entitled to the payment of one-half of the amount due on two installment promissory notes made payable to Culmore and Caputi jointly for real estate commissions.

Caputi filed his grounds of defense, and a "cross and counter claim" alleging that he was fraudulently induced by Culmore to enter into an employment contract whereby they were to share commissions on the sale of real estate, as a result of which Culmore received from a sale made by Caputi one-half of the commission paid on account in cash, and for the balance due it was made a joint payee on the notes sued on. Caputi prayed that he have judgment against Culmore for the commission paid to it in cash and for the amount claimed by Culmore as joint payee on the notes; that the notes be reformed by striking out the name of Culmore; and that the cause be transferred to the equity jurisdiction of the court.

A pretrial order entered pursuant to a stipulation of the parties provided: (1) that the cause remain on the law docket, and the equitable "cross and counter claim" filed by Caputi be tried by a jury at the same time as Culmore's claim; (2) that if the jury's verdict were in favor of Culmore, it should be dispositive of Caputi's counter-claim; and (3) that if the jury's verdict were in favor of Caputi, the trial judge acting as a chancellor might enter whatever judgment he deemed proper.

Counsel for the parties stipulated during the trial that if the jury found for Culmore, it would be in the specific amount sued for, namely, $4,173.33, but judgment would be for one-half of the proceeds of the notes; and if the jury found for Caputi, it would simply so state, but with the understanding between counsel that Culmore would recover $200, which was the difference between the $2700 paid by Culmore to Caputi and $2500 actually due him.

The jury returned a verdict for Caputi, and after overruling Culmore's motion to set aside the verdict the trial judge, acting as a chancellor pursuant to the pretrial order, entered judgment for Caputi on the contested one-half of the proceeds due on the notes; ordered that the name of Culmore as joint payee be stricken out of

the notes; and denied Caputi's claim to recover that part of the commission received in cash by Culmore.

Culmore contends in its assignments of error that the court erred in overruling its motion to strike Caputi's evidence on the ground that he had failed to prove fraud, and that the judgment was contrary to the law and the evidence.

The evidence, stated in the light most favorable to Caputi in accordance with familiar principles, is as follows:

On September 5, 1956, Caputi was employed by Culmore Realty Company as manager of its commercial and land development department. Under the terms of an oral contract of employment, which was to be later reduced to writing by Culmore, Caputi was to receive a drawing account of $125 per week until the closing of his first sale and thereafter $200 per week, fifty per cent of all commissions on commercial, development and investment properties sold by him, and an over-ride of a certain percentage on property sold by other salesmen of Culmore.

Caputi agreed to bring into the credit of Culmore his commissions on several prospective sales, if they were completed, which he had developed as a broker prior to his employment by Culmore.

On October 29, 1956, Caputi entered into a contract for the sale of a large tract of land which he had been attempting to sell for some time prior to his employment by Culmore. The commission on the sale was $13,346.66, and $5000 was paid on account by check payable to Culmore and Caputi, which was endorsed by Caputi and turned over to Culmore for deposit to the corporation account. On the day of the settlement two installment notes, dated December 6, 1956, in the amounts of $4,831.16 and $3,512.50, with interest, payable to Culmore and Caputi jointly, representing the balance due on the commission, were turned over to Caputi and he placed them in the Culmore file.

During the term of his employment by Culmore, Caputi received from the corporation six checks, totalling $2700, of which $2500 was charged against his half of the $5000 commission. The last check issued by the corporation payable to Caputi, for $200, was dated January 8, 1957, and was marked "draw on commissions." Thereafter Caputi asked for payments of $200 per week, in accordance with his contract, but Culmore refused to grant them.

During the latter part of January, 1957, Caputi learned that the president of Culmore was violating the employment contract, which

was never reduced to writing by Culmore, by attempting to sell commercial and land development properties and exclude him from sharing in the commissions.

As a result of the action of Culmore's president, and his failure to receive the $200 per week drawing account, Caputi requested a secretary of Culmore to let him have the aforementioned notes, which he photostated and turned the photostats over to the secretary for her to place in the corporation files. He kept the original notes, and just before terminating his employment with Culmore requested the president to assign them to him, which he refused to do.

We agree with Culmore's contention that Caputi's evidence does not support the allegations in his pleading that he was fraudulently induced to enter into the employment contract and to have the notes made payable to Culmore as a joint payee, but we cannot agree that the court erred in not sustaining Culmore's motion to strike all of Caputi's evidence.

Caputi presented evidence, which was not objected to and no motion was made to exclude it, tending to show that Culmore had breached its contract with him and that it was not entitled to recover one-half of the amount due under the notes. Hence the issue of whether Caputi was fraudulently induced to enter into the employment contract and to make Culmore a joint payee of the notes was not the only one presented under the evidence for the jury's determination.

We are not unmindful of the principle that proof must correspond with the allegations or grounds of defense, but where no objection has been made to the admission of evidence, or no motion is made to exclude it because of the supposed variance with the pleadings, such variance must be considered to have been waived. *Du Pont Engineering Co.* v. *Blair,* 129 Va. 423, 429-431, 106 S. E. 328, 330-331; *Morris* v. *Peyton,* 148 Va. 812, 816, 139 S. E. 500, 501; Burks Pleading and Practice, 4th ed., § 334, p. 638 et seq. If this rule of practice was not adhered to it would deprive parties of their right to amend their pleadings to conform with the evidence, which is permitted in proper cases under § 8-217, Code of 1950, 1957 Replacement Volume, and thereby defeat the ends of justice and the purpose of the statute. See *Burruss* v. *Suddith,* 187 Va. 473, 483, 484, 47 S. E. 2d 546, 551; *Newport News & Old Point R., etc., Co.* v. *McCormick,* 106 Va. 517, 518, 56 S. E. 281.

It is true that the jury should have been told, on the overruling

of the motion to strike, that Caputi's evidence did not support the allegations of fraud, but in view of the evidence tending to show a breach of contract and under the stipulation of the parties incorporated in the pretrial order we would not be justified in setting aside the final order of the chancellor and granting a new trial.

The stipulation provided that if the verdict of the jury was for Caputi, the trial judge sitting as a chancellor might enter whatever verdict and judgment thereon he deemed proper. The procedure agreed upon was in the nature of an issue out of chancery and is binding on the parties. The stipulation had the effect of authorizing the trial judge, acting as a chancellor, to enter his judgment, based on a different issue from the one set out in the pleadings and instructions, in accordance with what he deemed to be the right and justice of the case, after a consideration of all the evidence, heard *ore tenus*.

In *Richardson* v. *Breeding*, 167 Va. 30, 35, 187 S. E. 454, 456, we held that where an issue out of chancery has been awarded, although the jury has been misdirected, the decree will not be reversed and a new trial granted upon the issue if the verdict appears to be right upon a consideration of all the evidence. See also 7 Mich. Jur., § 155, p. 187, and the numerous cases there cited.

We are of opinion that the chancellor's judgment, entered pursuant to the stipulation incorporated in the pre-trial order, is in accord with the right and justice of the case. It is fortified by a jury's verdict settling all conflicts in the evidence and is supported by competent and credible evidence. It will not be disturbed by us. *De-Jarnette* v. *Brooks Lumber Co.*, 199 Va. 18, 20, 21, 97 S. E. 2d 750, 752; 7 Mich. Jur., Equity, § 145, p. 178, 189.

For the reasons stated, the judgment is

*Affirmed.*